BLACKMORE v. FAIRBANKS, MORSE & CO.

1. **Evidence:** OBJECTION TOO LATE: NO PREJUDICE. In an action for breach of warranty in the sale of machinery, plaintiff, in his examination in chief, stated that he had received from defendants a plan for setting it up, and in answer to the question, "was it erected according to that plan," he said "yes." Defendants then objected to the question on the ground that plaintiff should show the plan, and how the machinery was erected. *Held—*

Blackmore v. Fairbanks, Morse & Co.

(1) That the objection to the question was too late after it had been answered.

(2) That, even if the objection were made in time, the ruling was without prejudice, since defendants made no attempt to show, by cross-examination or otherwise, that plaintiff had deviated from the plan.

2. ———: OBJECTION WITHOUT GROUND STATED. A court is not obliged to sustain an objection to evidence when no ground for the objection is stated, even though a sufficient ground exists.

3. ———: OBJECTIONS: ONLY STATED GROUNDS CONSIDERED. Where a party objects to evidence upon certain grounds which are not well taken, it is not error for the court to overrule the objection, though a good ground for the objection may exist.

4. ———: POWER OF ENGINE: COMPETENCY. Where the power of an engine with which plaintiff had tried to run his mill was material, it was competent for a witness who had been engaged in operating the mill to testify to its power as compared with that of three water-wheels, of known power, by which the mill had been run.

5. ———: OF AGENCY: WHEN NOT ADMISSIBLE. One who has contracted as a principal cannot, when sought to be held upon the contract, be permitted to show that he was only an agent, where he does not propose to show that the other party knew of such agency at the time of contracting.

6. **Conspiracy:** WHEN NOT ACTIONABLE: EVIDENCE. Defendants, by counter-claim, sought to recover of plaintiff for an alleged conspiracy with one W., whereby defendants were induced to ship property to Iowa for W., but which was consigned to defendants, the object of the conspiracy being to get property of the defendants within the jurisdiction of the courts of Iowa, that the plaintiff might attach it in this case, which he did. The order on which it was shipped provided that it was not to pass to W. until he paid for it upon delivery, and it never was paid for, nor delivered to any one. *Held* that, if there was a conspiracy as alleged, it did not operate to deprive defendants of their property, and that the court properly refused to require plaintiff to testify in regard thereto.

7. **Sale:** WARRANTY: WHEN IMPLIED BY LAW. Where plaintiff ordered machinery without inspecting it, and with no opportunity to do so, but defendants knew the use for which it was intended, the law will imply a warranty that the machinery was fit for the designed use, and that it was in merchantable condition, unless such warranty was excluded by the terms of the order; and the mere fact that the contract in such a case provided for certain warranties did not operate to exclude the warranties implied by law, unless such implied warranties were incompatible with the terms of the contract. (See opinion for citations.)

*Appeal from  Butler  District  Court.*—HON.  JOHN  C.
SHERWIN, Judge.

FILED, FEBRUARY 3, 1890.

ACTION to recover damages alleged to have been
sustained by reason of breach of warranty in the sale of
machinery. There was a trial by jury, and a verdict
and judgment for plaintiff. The defendant appeals.

*Cummins & Wright,* for appellant.

*J. H. Scales,* for appellee.

ROBINSON, J.—The agreement under which the
machinery in controversy was sold was in writing and
in the form of an order. The portions material to a
determination of the questions raised on this appeal are
as follows :

"*Messrs. Fairbanks, Morse & Co., Chicago*

"Please furnish me at once the following named
goods: * * * One twenty-five-horse power Stand-
ard Westinghouse engine; one thirty-horse power
boiler, with fixtures complete, and machines as follows :
One steam pump, with sufficient capacity to supply
boiler and heater with water taken from the well;
* * * one Stillwell heater and connections complete.
* * * This order is for the engine and boiler at
Lesterville, Dakota Territory, with fixtures complete,
except inspirator and heater; the latter to be replaced
with the Stillwell heater. Said outfit to be in good
order, except from exposure to weather at Lesterville,
which has not damaged the real merits of the
machinery."

The machinery specified in the agreement was
delivered to plaintiff. The petition alleges that the
machinery was "warranted to be sufficient to furnish
the motive power for the Aplington Grist and Flouring
Mills, and be sound, and do good work, specified
in said warranty. * * * That on a specified test
thereof said engine, machinery and appliances sold by
defendant to plaintiff proved defective and insufficient,

in this: That it throws crank case oil into the heater and boiler, so as to render it dangerous, insufficient and entails great expense in its operation, and is insufficient to furnish the motive power for plaintiff's said mill." The answer denies the alleged warranty, denies the alleged defects in the machinery, and avers that the cause of the throwing of crank case oil into the heater and boiler was the use by plaintiff of an open heater, without an oil extractor. The answer further avers, by way of counter-claim, that plaintiff and one Wandby, by means of a fraudulent conspiracy, caused defendant to ship for said Wandby, at Parkersburg, Iowa, a beam stock-scale and beam box for the agreed price of one hundred and sixty-five dollars; that said scale and beam box were marked to defendants at Parkersburg, and upon their arrival there they were taken under a writ of attachment issued in this action; that the order for said attached property was given by Wandby, at the request and for the benefit of plaintiff, in order to get property of defendant, a foreign corporation, within the jurisdiction of this court, and thus cause defendant to appear in this action; that the price of the scale and box is unpaid. Judgment is demanded therefor. The answer further avers that defendant was not the manufacturer of the machinery in question, and that in the sale thereof it acted only as agents for the manufacturer, the Westinghouse Machine Works. The counter-claim is denied.

I. Plaintiff testified to receiving the machinery, and that he proceeded to erect the engine. After describing what was necessary to be done, he stated that he had instructions in regard to it; that defendant sent him a plan. He was then asked this question: "Was it erected according to the plan?" and he answered "Yes." Defendant then objected to the question upon the ground that plaintiff should show the plan, and show how the machinery was erected; and the objection was overruled. The objection should have been made, if at all, before the answer was given. The interrogatory

1. EVIDENCE: objection too late: no prejudice.

related to an issue tendered by the answer, and was asked of plaintiff during his examination in chief,. to support the averments of his petition. Defendant had an opportunity to cross-examine the witness, and test the accuracy of his answer. We do not find any attempt shown by the record to prove that plaintiff deviated from the plan furnished in setting up the machinery. In view of these facts no prejudice could have resulted to defendant from the ruling in question, even if it be conceded that the objection was made in time.

II. Plaintiff testified that the engine did not develop more than seventeen-horse power. He was then asked this question: "Was that suffi-

2. ——: objection without ground stated.

cient for the propelling of the mill machinery?" The question was objected to, but no ground of objection was stated. The substance of the answer was that the power developed was not sufficient. The court was not obliged to sustain an objection for which no ground was suggested, even though a sufficient one in fact existed. It is the right of the court to know upon what ground the objector relies. It is now suggested that the question was improper because it was asked on the theory that defendant agreed to furnish an engine and boiler sufficient to run plaintiff's mill, but the court charged the jury that it only agreed to furnish an engine of twenty-five-horse power. The evidence tended to show that an engine of twenty-five-horse power would run the machinery of the mill. Therefore the answer tended to show that the engine furnished was not of that power. The ruling in question was not erroneous.

III. Plaintiff was asked: "If the engine and boiler and appliances, furnished under the order, had been in good order, and of real merit, would it have been worth the price you paid?"

3. ——: objections: only stated grounds considered.

This was objected to on the ground that "the contract price is the established price between them, which they cannot deny." The objection

Blackmore v. Fairbanks, Morse & Co.

was overruled, and plaintiff answered: "Yes, sir. It would have been worth more." Appellant complains of the question on the ground that defendant did not agree that the machinery should be "in good order, and of real merit," as assumed by the question. But the objection did not raise the question now discussed. The question was not a proper one, but no prejudice could have resulted from the defect pointed out by the objection made.

IV. Appellant complains that a witness named Wheater was permitted to testify, without showing 4. ——: power of himself qualified as an expert, that the engine: com-petency. engine did not furnish twenty-five-horse power. The witness was engaged in the milling business in the mill in question, and knew the engine in controversy. He stated that the engine only furnished about seventeen-horse power, and knew that fact by comparing the power it developed with that developed by three water-wheels in the mill, of known power. The power of those wheels was ascertained by actual measurement. We think it was competent for the witness to show the result of a comparison of the power developed by the wheels with that furnished by the engine. The power of the latter may have been ascertainable with greater accuracy, but we are of the opinion that the evidence was admissible for what it was worth. The same is true of certain testimony of plaintiff, to the same effect, to which objection is made.

V. Appellant complains of the refusal of the court to allow defendant to show that it was an agent for the 5. ——: of agen- sale of the Westinghouse engine at the time cy: when not admissible. of the sale to plaintiff. It was not shown, nor was it proposed to show, that plaintiff knew of the alleged agency when he contracted with defendant; and in the contract it is named, and in all respects treated, as a principal. The evidence in question was therefore properly excluded.

VI. Other questions, based upon rulings of the court in regard to the introduction of evidence, are

6. CONSPIRACY:
when not
actionable:
evidence.

stated, rather than discussed, by counsel. Among them is one relating to the refusal of the court to require plaintiff to testify in regard to his alleged conspiracy with Wandby for ordering the scale and appurtenances in controversy. Plaintiff testified that he was not, so far as he knew, the owner of that property. The order upon which it was shipped provided that it should be sent to defendant at Parkersburg; that Wandby should pay the purchase price upon the delivery to him at Parkersburg of the property; and that the title thereto should not pass from defendant until the purchase price had been fully paid. It is not claimed that the property was delivered to plaintiff, nor to Wandby; and it is shown that the price is unpaid. Therefore, under the issues in the case, the alleged conspiracy of plaintiff with Wandby was wholly immaterial, as it did not operate to deprive defendant of its property. We are of the opinion that there was no error in the rulings in question.

VII. Appellant complains of the refusal of the court to give certain instructions asked by it and of the

7. SALE: war-
ranty: when
implied by
law.

giving of a portion of a charge on the same subject, which is as follows: "Under this contract, it was the duty of the defendant to furnish to the plaintiff an engine of the kind described, of twenty-five-horse power, and all other machinery and appliances specified in the contract, in good condition, and fit for use, except as damaged by exposure to the weather at Lesterville, Dakota; and if the defendant failed and refused to furnish the plaintiff the said machinery in the condition specified it would be liable to the plaintiff for damages in such sum as you may find from the evidence, and under the instructions he has suffered." Appellant contends that its contract would have been fully complied with, had it delivered to plaintiff a Standard Westinghouse engine in the condition in which such engines are turned out at the factory, whereas the instruction given required defendant to deliver a Westinghouse engine in good

condition, and fit for use, except as damaged by the weather; or, in other words, that the court construed the contract to include a warranty that the engine to be delivered, not only had not suffered injury, except by the weather, since it left the hands of the manufacturer, but also that it was so constructed as to be fit for use, and for the use plaintiff desired to make of it. The rule in regard to an implied warranty of quality has been stated as follows: "So far as an ascertained specific chattel, already existing, and which the buyer has inspected, is concerned, the rule of *caveat emptor* admits of no exception by implied warranty of quality. But where a chattel is to be made or supplied to the order of the purchaser, there is an implied warranty that it is reasonably fit for the purpose for which it is ordinarily used, or that it is fit for the special purpose intended by the buyer, if that purpose be communicated to the vendor when the order is given." 2 Benj. Sales, sec. 966. See, also, *King v. Gottschalk*, 21 Iowa, 513. In this case, plaintiff had not inspected the property ordered, and had no opportunity to do so, when the order was given. On the other hand, defendant knew the use for which the property was intended. Therefore, unless excluded by the terms of the order, there was an implied warranty that the property was fit for the designed use, and that it was in merchantable condition. Appellant contends that the order, in effect, contains an express warranty that the property shall be in good order; hence that implied warranties must be excluded. It is true that, as a general rule, no warranty will be implied where the parties have expressed in words the warranty by which they mean to be bound (2 Benj. Sales, sec. 1002); but the rule does not extend to the exclusion of warranties implied by law, where they are not excluded by the terms of the contract. Thus, an express warranty of title does not exclude an implied warranty of quality. 2 Benj. Sales, sec. 1002, note 40, and cases therein cited; *Merriam v. Field*, 24 Wis. 640; *Boothby v. Scales*, 27 Wis. 632; *Roe v. Bacheldor*, 41 Wis. 360;

*Wilcox v. Owens*, 64 Ga. 601; 10 Amer. & Eng. Cyclop. Law, 109. A warranty will not be implied in conflict with the expressed terms of the agreement; but there is no conflict of that kind in this case. The implied warranty that the machinery is fit for the use for which it was purchased is in harmony with the provisions specifying the power of the engine and boiler, and that it should be in good order, except from exposure to the weather, at Lesterville. We think the instruction in question was correct, and that those asked by defendant were properly refused. This conclusion is not in conflict with the cases relied upon by appellant, among which are *Warbasse v. Card*, 74 Iowa, 306; *Mast v. Pearce*, 58 Iowa, 579; and *Nichols v. Wyman*, 71 Iowa, 160. An examination of those cases will show that they decided, in effect, that the terms of an agreement in writing could not be varied or contradicted by evidence of a parol contemporaneous agreement. No question in regard to warranties implied by law was involved. The judgment of the district court is

AFFIRMED.