| 99 | 641 |
|---|---|
| 109 | 290 |
| 99 | 641 |
| 110 | 355 |
| 99 | 641 |
| 111 | 445 |
| 99 | 641 |
| 123 | 478 |
| 99 | 641 |
| 144 | 243 |

JOHN PUTH, Appellee, v. J. L. ZIMBLEMAN, Executor of the Estate of E. W. MCFARLAND, Deceased, Appellant.

**Alienation of Wife: CRIMINAL CONVERSATION:** *Evidence.* While it is the rule that in criminal conversation, actions, correspondence with the wife is inadmissible unless it was had before the misconduct, and that the rule is observed so that there may be no ground for imputing collusion, it seems that correspondence after intercourse, which indicates the feelings of the wife towards the paramour is admissible, where the action is for alienation *and* criminal conversation, if written during the period of alienation.

SAME. Aside from this, such letter is admissible, as part of a transaction in issue, where it contains an invitation to visit the wife and it appears that the visit was made on account of it, and its admissibility rests on the same ground as would a statement of the wife to the paramour, explanatory of their conduct.

SAME. That the wife wrote her husband a letter protesting wifely love and fidelity about the same time that she wrote said letter to her paramour, is not such evidence of collusion as to exclude the letter to the paramour.

OBJECTIONS: *Appeal.* An objection that a letter is incompetent, and immaterial because it was in the possession of the husband and wife, and was not binding on defendant, will not permit defendant to insist, on appeal, that it was erroneously admitted because it was written after intercourse.

COLLUSION: *Evidence.* A husband is not chargeable with collusion in allowing another to have criminal conversation with his wife, from the fact that after having his suspicions aroused, he, for the purpose of watching her, leaves open existing opportunities, where he does not create new ones, or invite the wrong. His mere negligence is not enough.

EXCESSIVE VERDICT: *Evidence.* A verdict for one thousand five hundred dollars, for alienation of affections and criminal conversation is not so large as to indicate passion or prejudice on the part of the jury, and will not be set aside, on appeal, as excessive, where the evidence simply justifies a finding for the plaintiff.

Asking Instructions: Where evidence admitted is admissible for certain purposes alone, it is not error that the instructions fail to limit it to those purposes, in the absence of a request to so charge.

SAME. An instruction allowing the jury, on a trial for alienation and criminal conversation, to award the plaintiff damages "for the loss, if any, which he has suffered therefrom in the affection, society, companionship, or services of his wife," is not erroneous as taking from the consideration of the jury the husband's liability to support the wife, as an offset to such damages, in the absence of a request for a more specific reference to the burden resting upon the husband, in that respect.

Appeal: MISCONDUCT: *Affidavits.* Alleged misconduct of counsel cannot be shown, on appeal, by affidavit not properly made part of the record.

MISCONDUCT OF COUNSEL—IN ARGUMENT: *Discretion.* The discretion of the trial court, in respect to the latitude allowed counsel in addressing the jury, will not be reviewed, unless plainly abused.

*Appeal from Boone District Court.*—HON. S. M. WEAVER, Judge.

TUESDAY, OCTOBER 27, 1896.

THIS is an action originally commenced by plaintiff against E. W. McFarland, to recover damages for alienating the affections of his wife, and for criminal conversation with her some time during the year 1894. The case was tried to a jury, resulting in a verdict and judgment for plaintiff, in the sum of one thousand five hundred dollars. The defendant appealed. After the appeal was taken, McFarland died, and his

executor was substituted as a party defendant.—
*Affirmed.*

*Dyer & Stevens* for appellant.

*Jordan & Brockett* and *E. F. Baker* for appellee.

DEEMER, J.—The petition is in two counts, one
for the alienation of the affections of plaintiff's wife,
and the other for seducing and debauching her. The
defense is a general denial. Upon the trial, plaintiff
was permitted to introduce two letters, known as
Exhibits A and B, over the objections of the defend-
ant. The first letter, bearing date August 7, 1894,
written by plaintiff's wife, while at Tama City, to
McFarland, and addressed to him at Boone, Iowa,
is as follows: "Tama City, Iowa, August 7,
1894. Friend Wallie: I haven't anything else
to do this morning, so I thought I had better write to
you. I am having a nice time, but it is so warm.
The baby is as well as she can be, and they all go wild
over her. Some one is pulling and carrying her
around all the time. I have had the headache nearly
every day since I have been here. I have not had
any beer, and you bet I miss it, too, and our moon-
light lunches. We will make up for lost time. We
were up to Toledo last Friday night; that is two miles
and a half from here. They have electric cars run from
here there. I got a letter from Puth Saturday night.
He says he feels awful bad. Why don't you give
him that medicine of yours. Have you been up home
with him since I left? He asked me when I was com-
ing home. I have been gone only a week. Wouldn't
that kill you? He would die if I would stay a month.
He was telling me what he cooked, and what a time
he had. I guess I will be obliged to come before the
15th if I want to see Dr. Rowe. If it was not for

that, I would not come. I am going out in the country to-morrow, to stay awhile with one of his cousins. I think I will feel a little lonesome out there, but nothing will do but I must go. They have just thirteen dogs, and mean as the dickens. I had a picnic last Saturday evening. The Marshalltown band was down here. Mamie and I just had a time. She said she was going to tell my old man on me. I will let you know when I come home, and if you want to come down you can. So good-bye. Now, you answer my letter, and tear this up. Yours truly, Katherine." The second was written to her husband from the same place, the day before the first. It need not be set out, for it contains nothing but family affairs, neighborhood gossip, and town news. It has no reference to McFarland except this: "Haven't you and Wallie been up to the house together? Don't have that country girl there too much." It gives evidence of the ordinary wifely regard and affection, and discloses nothing more than we have stated, except that the writer had a great liking for beer. The record discloses the following facts with reference to this first letter. Plaintiff, his wife, and defendant McFarland all lived in the city of Boone during the time material to our inquiries. Some time previous to the thirtieth day of July, 1894, these parties were together at plaintiff's house, and during the course of the conversation, plaintiff's wife said to McFarland, that she would like to go on a visit to Tama City, whereupon McFarland remarked, that he had some business there. Mrs. Puth went to Tama on the thirtieth day of July. On the eighth day of August, near the time for the departure of the train for Tama, McFarland came to Plaintiff's shop, and asked him to go with him to the latter place, saying that he had some business there, and must go right away. Plaintiff immediately left his shop, and went with McFarland to Tama. After they arrived there, all parties met, and drank

together, and finally McFarland suggested that he had business at Toledo, the county seat of Tama county. A team was procured, and Mrs. Puth proceeded to prepare for the journey. While she was dressing, McFarland remarked, that he was ready to go, and take her to Toledo. The drive was deferred, for some reason, until afternoon, whereupon defendant's testator and plaintiff's wife started on the journey alone. There was testimony to the effect, that McFarland said to Mrs. Puth, that he had received her letter. Plaintiff found the letter about a dressing case in McFarland's room, in Boone. When he found the letter he was much disturbed, and asked McFarland to telegraph for his wife, who was then at Tama, that he was sick. Plaintiff took the letter home, and a day or two afterwards he went to McFarland's room, and asked him if his wife ever came there, or ever wrote him a letter. McFarland denied it, and attempted to make plaintiff believe that his wife was faithful to him. But it is evident that defendant became suspicious of discovery, for he visited plaintiff, offered him money, and endeavored to induce him to commence a divorce proceeding. Defendant at no time denied the receipt of the letter, and did not contradict the testimony of the wife that he admitted to her the receipt of the letter.

The exact point made by appellant's counsel is that this letter, written after the time it is claimed defendant had intercourse with plaintiff's wife, is inadmissible, under the well-known rule that in criminal conversation, actions, correspondence and conversations with the wife, indicative of her feelings towards defendant, in order to be admissible, must have occurred prior to the alleged misconduct on her part, so that there may be no ground for imputing collusion. The rule is a just one, and, where applicable, ought to be rigidly enforced. But it must

be remembered that this is an action not only for criminal conversation, but for alienating the wife's affections. The latter cause of action is a continuing one, going on from day to day, and generally growing worse with time. The methods of the despoiler are subtle, insidious, and crafty. He wins the affections slowly and stealthily, and by degrees gradually accomplishes his purpose. It seems to us that it is entirely proper to show the feelings of the wife towards her paramour during the whole period of alienation. *Vide Edgell v. Francis* (Mich.) (33 N. W. Rep. 501). It is not important that the wife wrote a letter to her husband the day before, in which she expressed love and affection for him. While such a letter, considered in connection with the one in question, might, under certain circumstances, be evidence of collusion, yet it is well known that a wife who has been allured from the paths of rectitude is very profuse in her protestations of fidelity. There is nothing else in the case tending to show collusion, and we think the letter was properly admitted as a declaration of the wife tending to show her feelings towards the defendant. But, aside from this, the letter was admissible, just as a declaration made by her to the defendant, explanatory of their conduct, would have been. It explained and accounted for the visit defendant made her, and was an invitation to the defendant to call upon her. The invitation was accepted, and, as a part of this transaction, it was clearly admissible. There can be no question under the evidence, of the authenticity of the letter, or of the fact that it was received by the defendant, and we think it accounts for the trip defendant made to Tama City and Toledo.

With reference to Exhibit B, it may be conceded that the ruling of the court was erroneous. Yet it clearly appears that the error was without prejudice.

The letter tended to show, if it established anything, that the wife yet retained all her affection for her husband. It contained nothing prejudical to the defendant or his case. But we are not prepared to hold that the court erroneously admitted it. The objection lodged against it was that it was "incompetent and immaterial, for the reason that the evidence discloses that the letter has been in the possession of the plaintiff and his wife, and it was written by her; and for the further reason that anything she may say in the matter is not binding upon him." The proposition now argued is that the letter was written after the wrong complained of had been committed. We have often held that the grounds of objection must be stated, so that the court may know upon what the objector relies. *Rindskoff v. Malone*, 9 Iowa, 540; *Stove Co. v. Shedd*, 82 Iowa, 540 (48 N. W. Rep. 933); *Blackmore v. Fairbanks*, 79 Iowa, 282 (44 N. W. Rep. 548). To our minds the case falls squarely within the rule announced in the *Rindskoff Case*, and the court did not err in overruling the objection.

It is further agued by counsel that, if the letters were admissible, the court should have instructed the jury as to the purposes for which they could consider them. It is sufficient to say, in answer to this, that the defendant asked no such instructions, and the court was not required to give them. *Ault v. Sloan*, 4 Iowa, 508; *Hall v. Stewart*, 58 Iowa, 681 (12 N. W. Rep. 741); *State v. Hazen*, 39 Iowa, 648. Moreover, the court did instruct as to the effect connivance or collusion would have upon the case, and the defendant had the benefit of such an issue, although he did not plead it.

II. Complaint is made of the conduct of plaintiff's counsel in addressing the jury. The question argued does not fairly arise in the record. The alleged misconduct is attempted to be shown by affidavit. It

does not appear that this affidavit was properly made a part of the record, nor does it appear that we have all the evidence upon which the court acted in ruling on the motion for a new trial. Moreover, the court trying the case is vested with the largest discretion in such matters, and its action will not be reviewed unless this discretion has been plainly abused. If we were to concede that the statement was made of which the defendant complains, we do not think it would be such misconduct as to constitute reversible error.

III. The defendant complains of the instructions given by the court, with reference to the measure of damages. It is said, that the court directed the jury to allow plaintiff, if they found him entitled to recover, compensation for the loss of the services and society of his wife, "without burdening him with the obligation to support, care for, and clothe her." Counsel cite, in support of this contention, 3 Sutherland, Dam. page 2742, and ·Rudd v. Rounds (Vt.) (25 Atl. Rep. 438). The instruction complained of directs the jury to allow the plaintiff "for the loss, if any, which he has suffered therefrom, in the affection, society, companionship, or services of his wife, and then return your verdict for such sum as will fairly and fully compensate him for the injuries so inflicted." In the Rudd-Rounds Case, the instruction was to the effect that, "if the jury found plaintiff entitled to recover, his measure of damage would be the value of the services of the wife." There is a wide difference between the two instructions. In the one case the jury had the right to consider, and no doubt did, the obligation which plaintiff was under toward his wife, to clothe, support, and care for her. In the other, they could not do so, but were bound to allow the value of the wife's services. Moreover, the case of Rudd v. Rounds, was an action

for alienating the wife's affections, without the aggravation of criminal conversation. The instruction was in the line with those usually given in such cases (see *Wales v. Miner*, 89 Ind. 118), and, in the absence of a request for more specific reference to the duty and burden resting upon the husband, was not erroneous.

IV. It is contended that the verdict is contrary to the evidence and the law as given by the court, for the reason that the plaintiff contributed to the injuries of which he complains. We suppose the real contention is that the evidence shows that plaintiff connived at or colluded with his wife, or that he consented to the wrong done. If the jury had found that plaintiff was a confiding, trusting, unsuspicious husband, we would have agreed with them. And they may well have concluded from the evidence that, after having his suspicions aroused, he took means to catch the defendant in his house. It seems to be well settled that a husband may watch his wife, whom he suspects, and may even leave open the opportunities which he finds, so long, as he does not make new ones, or invite the wrong. 2 Bishop Mar. & Div. sections 213, 214. His mere negligence will not constitute a defense. Id. sections 208, 209. We do not think the evidence in this case established such connivance or collusion as should defeat plaintiff of a recovery.

V. Lastly, it is claimed that the verdict is not supported by the evidence, and is excessive. The evidence shows beyond a peradventure that the defendant McFarland furnished the plaintiff's wife with money and beer; that he placed at her disposal his horse and buggy; that he frequently took her buggy riding, many times at night; that he called at her house, and often made it a point to be there when he knew her husband was absent. And the jury were justified in finding that he had intercourse

with the woman on at least two different occasions. They may also have found that he gave the wife a venereal disease, which she in turn communicated to her husband. It is also true that the plaintiff and his wife may not have lived happily together, and that the wife was not entirely above suspicion. But it is clear that there was sufficient evidence to justify a verdict in favor of plaintiff. The amount allowed as compensation is not unusually large, and not such as to indicate passion or prejudice. The amount of damages in such cases as these is left largely to the discretion of the jury, and courts seldom interfere with verdicts on account of excessiveness. There is no prejudicial error in the record, and the judgment is AFFIRMED.