J. Norton GILTNER, Appellee,

v.

Joseph S. STARK, Appellant.

No. 56168.

Supreme Court of Iowa.

June 26, 1974.

Bailey C. Webber, Ottumwa, for appellant.

Barnes, Schlegel & Walter, Ottumwa, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, REES, and UHLENHOPP, JJ.

MASON, Justice.

This is an appeal by defendant, Joseph S. Stark, from a judgment rendered on an adverse jury verdict. J. Norton Giltner instituted a law action against defendant in the Jefferson district court seeking both compensatory and exemplary damages alleged to have been sustained as a consequence of defendant's wrongful interference with plaintiff's interest in the marital relationship existing between plaintiff and plaintiff's wife Carolyn.

The first division of plaintiff's petition is based on a claim for criminal conversation. In this division plaintiff alleged Stark willfully and maliciously had sexual intercourse with plaintiff's wife at various times during the period from the fall of 1970 until March 1971; that as a result plaintiff has been deprived of the comfort, society, companionship, assistance and services of his said wife.

In the other division plaintiff based his right of recovery on a claim defendant alienated the affections of Carolyn Giltner.

In support plaintiff alleged he and his wife Carolyn were happy and content in their marriage until the fall of 1970 when defendant acquired an improper influence over plaintiff's wife and thereafter willfully and maliciously, with intent to injure plaintiff, enticed her away from plaintiff and alienated her affections.

After the close of all evidence defendant renewed five motions for mistrial made during the course of trial, moved to require plaintiff to elect between submission of the cause of action asserted in division 1 and that asserted in division 2 of the petition, moved for a directed verdict as to both divisions and to withdraw from jury consideration plaintiff's claim with respect to exemplary damages. All motions were overruled and the matter submitted to the jury which found for plaintiff on both causes of action and awarded $35,000 actual and $25,000 punitive damages.

Defendant's motion for new trial was denied and he brings this appeal assigning 12 issues for review.

J. Norton Giltner and Carolyn Giltner were married in 1959. They apparently enjoyed a good marriage relationship for quite a few years; they had satisfactory sexual relations, took vacations together, went fishing, to fairs and auto races, and even performed some of the farm work together. Plaintiff provided his wife with the necessities of life and some luxuries.

In 1965 plaintiff and his wife became acquainted with defendant and his wife. Thereafter they became quite good friends. On the night of December 4, 1970, after finding his wife gone, plaintiff and his brother-in-law searched the area and discovered her at the Gaslight Motel, north of Ottumwa. At this time she told plaintiff she was in love with defendant. Although Carolyn later returned to the home and again engaged in sexual relations with plaintiff (although at a much reduced level) she finally left on July 27, 1971. The following day the original notice of petition for dissolution of marriage was served on plaintiff.

During the summer months of 1971 Carolyn was seen with defendant on a dead-end road in his pickup. From June 1970 to March 1971 she was seen with defendant in his truck and on several occasions was seen to kiss defendant while in the truck. A private detective hired by plaintiff's counsel on two occasions observed her and defendant enter a camper body located in a corn crib on a Jefferson county farm and remain there for over two hours. Charles Bennett, a witness for plaintiff, testified that Carolyn stated to him she and defendant loved each other and they were going away together. She stated to witness Vannoy she no longer loved plaintiff but he had not been mean to her and had been good to her. Defendant stated to Vannoy he was having an affair with plaintiff's wife which had gotten out of control. Witness Miller, Carolyn's stepfather, testified defendant stated to him that he couldn't leave her alone.

Plaintiff himself talked with defendant on December 6, 1971. Defendant stated he loved Carolyn and was willing to lose $50,000 for her.

The issues raised by this appeal, with some exceptions pointed out later, had been asserted in motion for new trial. They are evidentiary or procedural in nature and will be stated in some detail with relevant facts as the particular issue is considered in this opinion. The trial court's well-considered ruling on the motion in accordance with rule 118, Rules of Civil Procedure, has been most helpful to this court.

The issues will be considered other than in the order set forth in defendant's brief and argument.

I. One question to be determined is the propriety of the court's ruing denying defendant's motion to require plaintiff to elect for submission to the jury either the cause of action pled in division 1 or division 2. As indicated, plaintiff pled criminal conversation in division 1 and alienation of affections in division 2.

In this connection defendant does not contend the evidence was insufficient to submit both causes of action to the jury. Rather, he appears to take the position the jury could not understand the limited purpose of hearsay statements of the alienated spouse which were received in evidence as bearing on her state of mind or state of affections and therefore only one cause of action should have been submitted to insure defendant a fair trial. The court's instructions followed the pleadings in the case. It is presumed a jury obeys and understands the instructions of the court. Defendant does not question the ability of the jury to follow the instructions and properly consider the evidence in regard to the two different causes of action.

Although both criminal conversation and alienation of affections belong to the same class, arise from the marriage relation, and seek damages for loss of consortium, they are separate and distinct. They afford separate theories for one recovery.

The essential elements of a cause of action for alienation of affection are wrongful conduct of defendant, loss of affection or consortium and causal connection between such conduct and loss. An actual intent to alienate is not necessary if defendant's conduct is inherently wrong and tends to and does have the effect complained of. Mere loss of the spouse's affection does not render defendant liable unless his misconduct was a substantial factor in causing such loss. The right protected is freedom from wrongful interference by another causing the loss of the love, companionship and affection of the spouse. A cause of action for alienation of affection does not necessarily, though it may, involve a loss of affection through adulterous relations. Although not essential to recovery, adultery between defendant and plaintiff's spouse may be shown in aggravation of damages.

On the other hand, the gist of the action of criminal conversation is adul-

tery between defendant and plaintiff's spouse. The right protected is the exclusive right of one spouse to sexual intercourse with the other.

In support of the foregoing statements of law see Rank v. Kuhn, 236 Iowa 854, 857–858, 20 N.W.2d 72, 74–75; Kiger v. Meehan, 253 Iowa 746, 750, 113 N.W.2d 743, 746; Castner v. Wright, 256 Iowa 638, 643, 127 N.W.2d 583, 586; Allen v. Lindeman, 259 Iowa 1384, 1398, 148 N.W.2d 610, 613; and citations in these opinions.

This is not an election of remedies situation since plaintiff asserted two separate and distinct causes of action. See Allied Concord Financial Corp. v. Hawkeye Lbr. Co., 172 N.W.2d 264, 267–268 (Iowa 1969).

Under the record in light of the foregoing statements of law plaintiff was entitled to have both causes submitted to the jury. See Puth v. Zimbleman, 99 Iowa 641, 68 N.W. 895.

Defendant's argument to the contrary is without merit.

II. Another closely related issue stems from the trial court's overruling defendant's objection that testimony offered through four plaintiff witnesses as to declarations made to them by plaintiff's wife, Carolyn, bearing on her state of mind toward plaintiff was hearsay. In overruling defendant's objections the court on each occasion, at the request of defendant's counsel, admonished the jury it would be instructed with reference to the limited purpose for which the answers to such questions might be considered. In instruction 16 the court told the jury the limited purposes for which they might consider such evidence.

Counsel now contends the court should have orally instructed the jury with respect to the significance and limited purpose for which such evidence was admissible on each occasion and that the failure to do so was error.

In ruling on defendant's objections the trial court expressed the view it would not be orderly proceeding in conducting the trial to require the court to make such admonition at the time each question which called for such testimony under an exception to the hearsay rule in this type of case was propounded.

■ The statements challenged would not be admissible in the cause for criminal conversation because they are hearsay. In an action for alienation of affections, though not in an action for criminal conversation, declarations of the alienated spouse during the period of alienation may be shown as bearing on that spouse's state of mind and affection toward the plaintiff spouse. See Glatstein v. Grund, 243 Iowa 541, 548, 51 N.W.2d 162, 167, where this court said:

"Of course declarations of one not a party to the action are ordinarily not admissible in evidence. But there are exceptions to the rule. In an action like this, [alienation of affections] though the husband is not a party, his conduct, as well as defendant's, is directly involved. It is well settled that declarations of the alienated spouse during the period of alienation may be shown as bearing on the state of his mind and affections toward plaintiff and the effect of defendant's conduct upon him. Such evidence is not competent to show defendant in fact exerted a wrongful influence or said or did the things charged. * * * [citing authorities]."

■ In the case before us the limited admonition referred to was given many times although the jury was not fully instructed as to the consideration it should give the evidence until the end of the trial. Thus, they were alerted the evidence had limited scope.

Instruction 16 correctly stated the law as tailored to the facts of this case.

It is the view of the court that the trial court did not abuse its discretion in the manner in which it admonished the jury as to the limited use of such evidence.

Defendant's contention is without merit.

III. Defendant contends the trial court committed reversible error in failing to sustain his objections to various leading questions asked by plaintiff's counsel. This court has often stated that trial court has considerable discretion in admitting or excluding answers to leading questions and there must be a clear abuse of discretion to justify a reversal. Hackman v. Beckwith, 245 Iowa 791, 805, 64 N.W.2d 275, 284; State v. Long, 256 Iowa 1304, 1310, 130 N.W.2d 663, 666; Hardaway v. City of Des Moines, 166 N.W.2d 578, 583 (Iowa 1969). The problem presented by the use of leading questions is thoroughly discussed in 3 Wigmore on Evidence, (Chadbourn Rev.), sections 769–780.

Under this test no abuse of discretion is apparent. This contention is without merit.

IV. Defendant maintains the trial court erred in overruling his motion for mistrial after plaintiff was asked on what day he was served with dissolution papers by his wife. The ground for the motion, also urged on this appeal, was that the giving of this information violated section 598.26, The Code, 1971. But for this statute, in a case of action for alienation of affections, the existence of a divorce action brought by the alienated spouse against the plaintiff spouse is admissible in evidence. Hardwick v. Hardwick, 130 Iowa 230, 236, 106 N.W. 639, 641; Case v. Case, 212 Iowa 1213, 1217, 238 N.W. 85, 87.

The relevant part of section 598.26 is as follows:

"Record—impounding—violation indictable. The record and evidence in all cases where a marriage dissolution is sought shall be closed to all but the court and its officers, and access thereto shall be refused until a decree of dissolution has been entered. If the action is dismissed judgment for costs shall be entered in the judgment docket and lien index. The clerk shall maintain a separate docket for dissolution of marriage actions. No officer or other person shall permit a copy of any of the testimony, or pleading, or the substance thereof, to be made available to any person other than a party or attorney to the action. Nothing in this section shall be construed to prohibit publication of the original notice as provided by the rules of civil procedure. * * *."

Peters, Iowa Reform of Marriage Termination, 20 Drake L.Rev. 211, 219, has this statement about the purpose of the statute:

"A valiant and almost too successful effort has been made in the new act to shield the affairs of the parties from the prying eyes of the general public during the pendency of the action. The purpose is easily recognizable, and it is a laudable one. If the conciliation process is to have some hope of success, interference from outsiders in public position-taking by the parties themselves is to be discouraged. Therefore, the conciliator should be able to work in as confidential an atmosphere as possible."

Defendant's claim as to the scope of the statute is a very broad one; in effect, he would prohibit a party to the action from voluntarily telling another of the existence of the action.

Several well-known principles are applicable to judicial interpretation of statutes. In construing a statute not previously before this court we must examine both the language used and the purpose for which the legislation was enacted. State v. Steenhoek, 182 N.W.2d 377, 379 (Iowa 1971) and Northern Natural Gas Company v. Forst, 205 N.W.2d 692, 695 (Iowa 1973).

In Bruce v. Wookey, 261 Iowa 231, 233, 154 N.W.2d 93, 94, the court said: "In seeking the meaning of a law the entire act [must] be considered. Each section must be construed with the act as a whole and all parts of the act considered, compared and construed together."

Cedar Mem. Park Cem. Ass'n v. Personnel Assoc., Inc., 178 N.W.2d 343, 350 (Iowa 1970), has this statement: " * * * [I]t is not permissible to rest our interpretation of a legislative act on any one part or to give undue effect thereto. The ultimate object is to discover the real purpose and meaning of the act as a whole. To best accomplish this we must consider all parts of the enactment together. * * * [citing authorities]."

Dobrovolny v. Reinhardt, 173 N.W.2d 837, 840 (Iowa 1970), tells us: " * * * [T]he subject matter, effect, consequence, and the reason and spirit of the statute must be considered, as well as words, in interpreting and construing it."

Finally, a statute should be given a sensible, practical, workable and logical construction. Janson v. Fulton, 162 N.W.2d 438, 443 (Iowa 1968); Northern Natural Gas Company v. Forst, 205 N.W.2d at 695.

In In Re Marriage of Williams, 199 N.W.2d 339, 344 (Iowa 1972), this court spoke of the legislative purpose and intent of chapter 598, The Code, insofar as that intent and purpose relevant to a consideration of the "guilty party" concept was to be considered in providing an award or an allowance of alimony or support money. However, the court did not reach the section relied upon by defendant here.

The question put to plaintiff called only for the date he was served with notice of a dissolution of marriage action brought by his wife, Carolyn Giltner. It did not seek to call for the substance of the pleadings, the record, evidence or other testimony relating to the dissolution proceedings.

In our opinion the purpose of section 598.26 was to fulfill the need for secrecy as to the factual details of an action for dissolution including those facts causing the breakdown of the marital relationship by preventing the making of such details public until they were decided by a judicial determination in order to permit the conciliation process to have some hope of success.

We do not interpret the statute as having an intent to prohibit the question asked here. Defendant's contention is without merit.

V. Submission of punitive damages as an element to be considered by the jury, in its discretion, in the event it found plaintiff entitled to recover actual damages under division 1 or division 2 of his petition notwithstanding defendant's motion to withdraw punitive damages as an element of recovery from jury consideration is another issue presented for review.

In instruction 20 the trial court submitted punitive damages in regard to both the cause of action alleged in division 1 (criminal conversation) and that declared on in division 2 (alienation of affections). In answer to special interrogatories the jury found plaintiff was entitled to an allowance of exemplary damages on both causes of action.

Defendant does not challenge the accuracy of instruction 20 but contends this is not a type of case where such damages are properly allowable for jury consideration.

We are not concerned with the province of the jury to assess, in addition to actual damages, punitive or exemplary damages, if they believe the situation warrants such damages. Rather, we are concerned with the submission of such damages as an element of recovery in this type of action.

In considering the matter of exemplary or punitive damages in Claude v. Weaver Construction Co., 261 Iowa 1225, 1229–1230, 158 N.W.2d 139, 143, this court quoted with apparent approval this statement from Sebastian v. Wood, 246 Iowa 94, 100–101, 66 N.W.2d 841, 844:

"A reference to the nature of exemplary or punitive damages, sometimes designated as 'smart money', and the purposes of their allowance may be helpful. Their main purpose as indicated in their designation is

that they are awarded under proper circumstances and conditions as a punishment for the particular party involved and as a warning and an example to him in the future, and to all others who may offend in like manner. The award of such damages constitutes an effective deterrent to such offenders, and a salutary protection to society and the public in general. They are not recoverable as a matter of right and are only incidental to the main cause of action, and can be awarded only when actual and substantial damages are allowed. They are in no way compensatory, and while they have a secondary purpose in adding to the complainant's award because injury to him may well have been aggravated by its malicious, oppressive, willful, wanton, or reckless causation, yet, whatever benefit he so receives comes to him not as compensation for the wrong done him but as purely incidental and by the grace and gratuity of the law, as punishment of the wrongdoer, and as an example and deterrent to others."

■ In the absence of malice punitive damages cannot be awarded. Syester v. Banta, 257 Iowa 613, 627, 133 N.W.2d 666, 675.

■ The "malice" required to permit an award of exemplary damages is something less than actual ill will or hatred toward another. When that state of mind is present there is actual malice. Legal malice is a fact to be found by the jury from the evidence in the case and may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights, McCarthy v. J. P. Cullen & Son Corp., 199 N.W.2d 362, 369 (Iowa 1972), and justifies submission of the issue.

■ In other words, when the evidence tends to establish defendant's conduct was done in such a manner and under such circumstances as to show heedlessness and an utter disregard and abandonment as to what result might flow from doing the act complained of or from the manner in which it is done a finding of legal malice sufficient to support submission of punitive damages to the trier of fact would be justified. See Northrup v. Miles Homes, Inc. of Iowa, 204 N.W.2d 850, 859 (Iowa 1973).

■ We consider first whether the issue of punitive damages should have been submitted in plaintiff's action of criminal conversation. In an action of criminal conversation where the gist of the action is adultery between defendant and plaintiff's spouse malice is presumed and it is proper to submit punitive damages as an element to be considered by the trier of fact in fixing the amount of the award to plaintiff in the event such fact finder determines plaintiff is otherwise entitled to recover actual damages.

■ There was substantial evidence bearing on defendant's adulterous conduct with plaintiff's spouse to justify submission of punitive damages as to division 1.

The question whether the issue of punitive damages should have been submitted in the action for alienation of affections under this record remains to be determined.

■ Punitive damages are recoverable in an action for alienation of affections of a spouse where it appears defendant's conduct was malicious or wanton. Pedersen v. Jirsa, 267 Minn. 48, 51, 125 N.W.2d 38, 41. See also Annot., 31 A.L.R.2d 713, 717, where the author states, "Although the contrary view has been taken in some jurisdictions, it has been widely held that punitive or exemplary damages are recoverable in an action for alienation of the affections of a spouse, where the acts complained of were done with malice." Cases from many jurisdictions including Boom v. Boom, 206 Iowa 70, 220 N.W. 17, which recognizes the rule, are set forth.

■ It is the conclusion of this court that in light of the foregoing and other authorities the proper rule should be that be-

fore the court is justified in submitting to the jury the question of punitive damages on account of alienation of affections, as distinguished from criminal conversation, the evidence must show defendant's acts in alienating the affection of the spouse were done with malice or that there were circumstances of aggravation. See Walter v. Wilson, 228 So.2d 597, 598 (Miss.1969).

■ There is substantial competent evidence in the record relating to defendant's conduct which would support a finding such conduct was wrongful and a malicious interference with plaintiff's interest in the marital relationship existing between plaintiff and his alienated spouse.

In the case before us the trial court was justified in submitting to the jury the issue relating to punitive or exemplary damages for consideration in fixing the amount of plaintiff's recovery, if any, in both causes of action.

■ VI. Defendant next contends the verdict of $60,000 was so excessive as to shock the conscience.

"In considering defendants' contention the verdicts are so excessive as to shock the conscience and show passion and prejudice, we must take the evidence in the aspect most favorable to plaintiff which it will reasonably bear. We must also give weight to the fact the trial court, with benefit of seeing and hearing the witnesses, observing the jury and having before it all incidents of the trial, did not see fit to interfere. * * * [citing authorities]." Wiles v. Myerly, 210 N.W.2d 619, 632 (Iowa 1973).

Pagitt v. City of Keokuk, 206 N.W.2d 700, 704 (Iowa 1973), has this statement:

" * * * The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons. We have said many times we will reduce or set aside a verdict only if it is (1) flagrantly excessive or in-adequate; or (2) so out of reason as to shock the conscience of sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidential support. * * * [citing authorities]."

In this connection see also Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W. 2d 807, 813–814, and Miller v. Young, 168 N.W.2d 45, 52–53 (Iowa 1969).

The trial court made a thorough examination of the record before ruling on defendant's motion for new trial on this ground. Emphasis was placed on the following: plaintiff and Carolyn were happily married for over 10 years; plaintiff enjoyed her companionship, love, affection and society; defendant persisted in wrongful conduct after requests to desist; defendant's own statement that he was willing to lose $50,000 for Carolyn to plaintiff; and sufficient circumstantial evidence from which the jury could find criminal conversation.

The evidence is considerable. Defendant's assertion the verdict was the result of passion and prejudice is unsupported. The verdict, although generous, is not so flagrantly excessive as to shock the conscience or sense of justice or raise a presumption it is the result of passion and prejudice or other ulterior motive or is lacking in evidential support. See Frantz v. Knights of Columbus, 205 N.W.2d 705, 712 (Iowa 1973) and authorities cited.

The trial court was correct in overruling defendant's motion for new trial in this respect.

VII. Defendant insists he was entitled to a new trial because of highly prejudicial statements volunteered by Robert P. Miller, Carolyn's stepfather, as a witness for plaintiff. When asked about a conversation he had with Carolyn in December 1970 Miller first volunteered what he said to Carolyn before she began to talk. The statements amounted to a lecture or ser-

mon that she was engaged in an affair with defendant which disgraced herself, her family and relatives.

Some of the questions propounded to this witness were objected to as calling for hearsay. Here again the court in overruling the objection admonished the jury they would be instructed to the limited use they might make of this testimony. The matter has been fully considered in another division of this opinion.

In other instances defendant's counsel moved to strike the witness' answer as not responsive.

The objection that the answer of a witness to a question is not responsive does not lie in the mouth of the one who is not examining the witness. This objection of want of responsiveness in an answer is available only to the party asking the question. Fisher v. Skidmore Land Co., 189 Iowa 833, 837, 179 N.W. 152, 154. See also Ladd, Objections, Motions and Foundation Testimony, 43 Cornell L.Q. 543, 555–556.

Some of the trial court's rulings on this objection were more favorable to defendant than he had a right to expect.

The trial court did not abuse its discretion in overruling defendant's motion for a mistrial urged in connection with this witness' testimony nor in denying a new trial on this ground.

VIII. Defendant asserts error in overruling of his motion for new trial based on jury misconduct. Two jurors stated by affidavit that during deliberation a case of similar nature by the name Copeland which was settled for $27,000 was mentioned. The affidavits show that the case was merely mentioned and there was little, if any discussion about it. A hearing concerning the alleged misconduct was first requested but later withdrawn. The trial court overruled the motion.

There are several well-known rules in regard to review of a ruling on a new trial motion. In Re Estate of Cory, 169 N.W. 2d 837, 845 (Iowa 1969), sets them out:

"* * * In order to justify a new trial on the basis of misconduct of jurors it must appear the misconduct was calculated to, and it is reasonably probable it did, influence the verdict. * * * [citing authorities]

"* * *

"The trial court has wide discretion in determining whether alleged misconduct of the jurors is prejudicial. Unless abuse of discretion is clearly shown his decision should not be reversed. * * * [citing authorities]."

A new trial will be granted only if the conduct materially affected the movant's substantial rights. Rule 244, R.C.P. There is no presumption that misconduct merits a new trial. Fordyce v. Cappel, 257 Iowa 763, 765, 133 N.W.2d 664, 665.

Defendant's showing here is minimal. On their face the affidavits show that the matter was mentioned but then dropped and not further discussed. It is not reasonably probable that the misconduct, if any, influenced the verdict. This is not the factual situation presented in King v. Barrett, 185 N.W.2d 210, 213 (Iowa 1971).

Trial court did not abuse its discretion; defendant's contention is without merit.

IX. The trial court's denial of three separate motions for mistrial made immediately following alleged misconduct of plaintiff's counsel is still another issue presented for review. In all, defendant made five motions for mistrial, four during the presentation of plaintiff's case in chief and one during presentation of defendant's case.

Review in this court of alleged error in overruling motion for mistrial is limited to consideration of those grounds asserted and brought to the attention of the trial court in the motion for mistrial. Other grounds may not be effectively as-

serted the first time on appeal as a basis for reversal.

In Baysinger v. Haney, 261 Iowa 577, 581–583, 155 N.W.2d 496, 498–499, this court recognized certain fundamental rules which apply to an appeal based on claimed misconduct of counsel for the prevailing party. The opinion also observes that Connelly v. Nolte, 237 Iowa 114, 130, 21 N.W.2d 311, 319, considers claims of misconduct perhaps more fully and cites more authority on the point than any other decision of this court.

The opinion in *Baysinger* points out that the trial court has considerable discretion in determining whether alleged misconduct, if there was such, was prejudicial since he is better able to appraise the situation than this court on appeal. It further noted this court will not interfere with the trial court's determination of such a question unless it is reasonably clear discretion has been abused and that ordinarily an instruction to the jury to disregard the asking of questions claimed to be misconduct leaves no ground for complaint except in extreme instances where it is manifest the prejudicial effect remained and influenced the jury notwithstanding the instruction.

Many precedents for the proposition that unless it appears probable a different result would have been reached but for claimed misconduct of counsel for the prevailing party this court is not warranted in interfering with such ruling are cited in Connelly v. Nolte.

The sequence of questions and objections thereto is set out by defendant in the first section of his brief point 1. The questions were asked defendant by plaintiff's counsel and concerned his relationship with Carolyn Giltner. Finally, counsel asked this question: "Have you helped Carolyn disrobe until she was naked since the fall of 1970?" An objection was sustained but defense counsel immediately moved for a mistrial. Out of the presence of the jury defendant made the following motion for mistrial:

"Now comes the defendant, the jury having been excused and out of the presence of the jury, and moves the Court to declare a mistrial for the willful and unseeming conduct of counsel W. T. Barnes *in the last question proposed and presented in the presence of the jury* * * * for the reason the question with reference to disrobing Mrs. Giltner and all following represents an unwarranted assumption * * *. The *question* was presented and *was* asserted for the sole purpose of alienating the jury, causing them to become biased and prejudiced against the defendant in violation of his constitutional right to a fair trial. * * *" (Emphasis supplied).

The motion was overruled and counsel admonished not to pursue that type of interrogation further.

Clearly, the mistrial motion concerned a single question; alleged misconduct involved in asking other questions, which are set out in defendant's brief in this first assignment, was not asserted in the trial court as the basis for mistrial. Neither were these other questions later mentioned in the renewal of this mistrial motion or the motion for new trial. Insofar as defendant sets out other questions as constituting misconduct and meriting mistrial, such matters are asserted for the first time upon this appeal.

In ruling on defendant's motion for new trial urged on this specific ground the trial court stated: "Apart from his privilege to refuse to answer the question, it is doubtful that the court should have sustained the objection to the question. Such an inquiry would be material and relevant as it bears upon the wrongful acts pleaded in the cause for alienation, as well as circumstantial evidence of criminal conversation."

We agree with the opinion expressed by the trial court in overruling defendant's motion for new trial. The trial court would have been correct in overruling defendant's objection.

The contention is without merit.

The second part of defendant's contention in this respect concerns alleged misconduct of counsel in questioning plaintiff. Questions about plaintiff and Carolyn's sex life prior to December 4, 1971, the presence of sperm on some fancy undergarments and Carolyn's use of birth control pills are asserted as misconduct and grounds for mistrial.

In regard to questions about plaintiff's sex life with Carolyn defendant objected on the grounds the questions assumed facts not in evidence and were prejudicial and argumentative. Defendant asserts counsel's misconduct in regard to this line of questioning for the first time upon this appeal; a motion for mistrial asserted misconduct in other specific instances but not in this regard. The trial court was never asked to pass on alleged prejudicial misconduct in regard to questions concerning plaintiff's sex life with Carolyn.

There is nothing for review in this respect.

The next sequence involves questions about plaintiff's observation of the condition of some fancy panties. The trial court allowed plaintiff to testify as to what he observed but struck from the record testimony that streaks and spots on the panties were male sperms; the jury was admonished to disregard that testimony. Counsel then asked, "Well, are you familiar with the smell of male sperm?" Defendant's objection was sustained and the matter was not further pursued. The mistrial motion asserted such questions assumed facts not in evidence and were pursued in order to prejudice the jury. The trial court apparently found no prejudice and overruled the mistrial motion based on this ground.

The procedure to which defendant takes exception was neither repeated nor later pursued. Thus, Brooks v. Gilbert, 250 Iowa 1164, 98 N.W.2d 309 and other authorities to which defendant refers relative to the issue now before us are neither persuasive nor controlling.

We find no abuse of the trial court's discretion in this ruling.

Misconduct in questioning about Carolyn's use of birth control pills was also asserted as grounds for mistrial. In brief, three questions were asked plaintiff all tending to elicit testimony that plaintiff discovered Carolyn was using birth control pills after December 1970 and before she had not. All objections were sustained and the trial court found no merit in the motion on that ground. Defendant has not made the necessary showing of abuse.

The final segment of this assignment concerns the cross-examination of Carolyn. In his brief defendant sets out various questions concerning the fancy panties and use of birth control pills as constituting misconduct. These instances, however, were not asserted as grounds for mistrial in the trial court. They present nothing for review.

Alleged counsel misconduct is thus limited to an examination of this question: "Did you have sexual intercourse with Joseph Stark in January, 1971?" Motion for mistrial was based on misconduct in regard to this question alone.

Early in the cross-examination, counsel for plaintiff asked defendant's witness, Carolyn Giltner, whether she had sexual intercourse with the defendant. No objection was made by defendant's counsel to the question propounded. The witness claimed privilege under section 622.14 and did not answer.

On direct Carolyn testified about her sexual relationship with plaintiff; plaintiff's counsel argues that this was sufficient to open up cross-examination into her sexual relationship with defendant. Plaintiff's counsel would appear to have a reasonable argument in regard to the permissible range of cross-examination; such argument would also appear to negate the charge of bad faith in asking the particular question involved.

Plaintiff's counsel did not pursue the matter after the adverse ruling by the court.

The trial court found no prejudicial misconduct on the part of plaintiff's counsel in this regard. We are not prepared to say this was an abuse of the court's discretion.

■■■ Many of. the questions· asked by plaintiff's counsel during examination of witnesses were subject to the complaint these questions assumed the truth of controverted facts and inserted the assumption as a part of a question on another fact. Where the question assumes any fact which is in controversy, so the answer may really or apparently admit that fact, it is leading. Likewise a question admitted of being answered by a simple "yes" or "no" has been regarded as leading. See 3 Wigmore on Evidence (Chadbourn Rev.) sections 771, 772.

The trial court has a great deal of discretion in ruling on such matters and we find no abuse of its discretion in such rulings. Nevertheless, this type of examination is neither recommended nor approved. In a given case it could prove fatal.

X. Another issue concerns the fifth amendment right against self-incrimination. The trial court sustained numerous assertions of the privilege by defendant during the course of his testimony. A requested cautionary instruction as to the significance of the assertion of the privilege was refused by the court. No instruction was given stating an inference of guilt could be taken from defendant's assertion of the privilege; indeed, no instruction touching on the privilege was given at all. Defendant asserts error in the failure to give his requested instruction which was in these words:

"Under the constitution of the United States and the laws of the State of Iowa, it is the right of any person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty for such silence. You are therefore instructed that you shall not draw or attempt to make any inference in respect to any matter or circumstance concerning which any witness has chosen to remain silent in exercise of his constitutional right to do so; and by reason thereof the assertion of said constitutional right on the part of any witness may not be considered as part of the evidence properly submitted to you for your consideration in your deliberations as a jury."

The instruction is self explanatory but essentially would tell the jury not to infer anything from assertion of the privilege. Timely exception was taken to the refusal to give this instruction.

The issue .here is not whether it was error to instruct the jury an inference of guilt could be drawn from defendant's assertion of the privilege; such is not the issue because no instruction in that regard was given. The main question here is whether once the privilege has been asserted in a civil case the court is required to instruct the jury on request that an adverse inference from failure of a party to testify in a civil case may not be made from such assertion.

The law in Iowa is that in a civil action a defendant's assertion of his privilege against self-incrimination may be shown to his detriment. Amana Society v. Selzer, 250 Iowa 380, 388–389, 94 N.W.2d 337, 342; Allen v. Lindeman, 259 Iowa 1384, 1396, 148 N.W.2d 610, 617; Bauer v. Stern Finance Company, 169 N.W.2d 850, 854–855 (Iowa 1969).

However, a study of the three cited cases compels the conclusion none of them reach the question previously stated. Defendant leans heavily on Justice Rawlings' dissent in *Bauer*. It is our view the dissent does not reach the point involved.

It is well settled that in a criminal prosecution the jury may not be instructed defendant's failure to testify could be considered an inference of guilt; furthermore, a

prosecutor may not comment on defendant's failure to take the stand. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; State v. Johnson, 257 Iowa 1052, 135 N.W.2d 518; State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444.

There is a conflict of authority whether the trial court in a criminal prosecution where the accused fails to testify should, in the absence of a request, give a cautionary instruction that no inference may be drawn from defendant's assertion of his constitutional privilege against self-incrimination. See Annot., 18 A.L.R.3d 1335.

In State v. Kimball, 176 N.W.2d 864, 869 (Iowa 1970), this court held:

"Because of the divergent opinions in this sensitive area and as the giving of even a cautionary instruction favorable to defendant may violate the spirit of Griffin v. State of California, supra, we believe it is advisable for us to take a definitive position on this issue. We now hold that such instruction should not be given in any future trial unless it is requested by defendant, and that it will be considered error if it is given, absent such request * * *."

Defendant also cites Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653; and Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. We will have more to say later concerning these cases.

Rule 513, Proposed Rules of Evidence for United States Courts and Magistrates provides:

"Comment Upon or Inference From Claim or Privilege; Instruction.

"(a) Comment or inference not permitted. The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom.

"(b) Claiming privilege without knowledge of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

"(c) Jury instruction. Upon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom."

Adoption of this rule, of course, would support defendant's position. However, rule 513 was among those proposed rules of the new code dealing with the privilege concept which were deleted in the bill passed by the House of Representatives and sent to the Senate.

We believe the New Jersey court in Duratron Corp. v. Republic Stuyvesant Corp., Et Al., 95 N.J.Super. 527, 531, 231 A.2d 854, 856–857, states the view this court should adopt in reference to the problem. We quote from it at length:

"The predominant rule has always been that insofar as an adverse inference from failure of a party to testify in a civil cause may tend to visit upon him civil consequences (here, e. g., a judgment for damages) there is no infringement of the party's rights under the Fifth Amendment or similar guarantees. * * * [citing authorities]

"The rule permitting adverse inferences from the failure of a party in a civil cause to testify as to matters in issue within his personal knowledge is commonplace and elementary in our jurisprudence. In our judgment, neither Malloy, supra, nor any of the other recent decisions of the United States Supreme Court broadening the scope of the protection of the Fifth Amendment impairs that principle in its application to a situation such as presented here. See Murphy v. Waterfront Commission of New York, 378 U.S. 52, 84 S.Ct.

1594, 12 L.Ed.2d 678 (1964); Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Garrity v. State of New Jersey, 385 U.S. 493, 87 S. Ct. 616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed. 2d 574 (1967).

"*Malloy* and *Murphy,* were tests of a state's right to compel self-incriminating testimony in proceedings to investigate crime or *quasi*-criminal conduct as against a claim of privilege under the Fifth Amendment, held in those cases to be enforcible in state proceedings. *Griffin*, held it impermissible in a state criminal prosecution for the court or the state to advert to the defendant's failure to testify. *Spevack,* decided that to disbar a lawyer for his failure to respond to a subpoena for his records relevant to an investigation of unethical law practice, when such refusal was on grounds of the privilege, was to impose too serious a penalty as the price of his invocation of the privilege ('threat of disbarment and the loss of professional standing, professional reputation, and of livelihood;' 385 U.S. 511, 87 S.Ct. at 628, 17 L.Ed.2d, at p. 578). *Garrity* held that a confession was illegally introduced into evidence against a policeman in his criminal prosecution for conspiracy when it was shown that the confession was obtained from him during an investigation under threat of his removal from office if he declined to furnish certain information under claim of his privilege. The reversal of the conviction was placed on Fourteenth Amendment grounds against the use of coerced confessions in state courts. 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d, at p. 567).

"None of the opinions of the United States Supreme Court cited purports to go so far as to absolutely proscribe the visitation of any and all adverse consequences upon one who invokes the Fifth Amend-

ment. As noted, in *Garrity* the threatened consequence of assertion of privilege was loss of public employment as a police officer; in *Spevack* the actual consequence was disbarment as a lawyer. In contrast, the present defendant risked only the probative strengthening of a civil claim against himself with an ultimate hazard of nothing more than a money judgment against him. Moreover, the drawing of the inference was not mandatory, but at the discretion of the factfinder. We do not regard these consequences as such a momentous 'penalty,' within the rationale of Malloy v. Hogan, supra (378 U.S., at p. 8, 84 S.Ct. 1489, 12 L.Ed.2d 653), as can fairly be said to impair the constitutional privilege." (Emphasis in the original).

■ We now hold the court is not required to give a cautionary instruction dealing with the drawing of adverse inferences from the assertion by a party in a civil case that an answer to a question propounded would violate his privilege against self-incrimination guaranteed by amendment 5 of the federal constitution or as proscribed by section 622.14, The Code, either on its own motion or at the request of a party invoking the privilege.

The trial court was correct in refusing to give the requested instruction.

XI. Defendant is not entitled to a new trial for any of the reasons properly urged in this court.

In reaching our determination of the issues presented by defendant's appeal we have considered every contention asserted by him whether specifically mentioned or not in the course of this opinion and find no error requiring reversal.

The case is therefore

Affirmed.