95 N.J. Super. 527 (1967)
231 A.2d 854
DURATRON CORPORATION, A NEW YORK CORPORATION, PLAINTIFF-RESPONDENT,
v.
REPUBLIC STUYVESANT CORPORATION, ETC., ET AL., DEFENDANTS, AND HAROLD JACOBS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1967.
Decided June 23, 1967.
*528 Before Judges CONFORD, FOLEY and LEONARD.
Mr. S.M. Chris Franzblau argued the cause for appellant, Harold Jacobs (Messrs. Beckerman & Franzblau, attorneys).
Mr. Irwin I. Kimmelman argued the cause for respondent (Mr. Max L. Rosenstein, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant Jacobs, a former vice-president of defendant Republic Stuyvesant Corporation ("Republic" hereinafter), appeals from a judgment against him, another officer, Irene Vitullo, who was assistant secretary, and the corporation, for damages sustained by plaintiff through their fraud.
The alleged fraud, found proven by the trial court sitting without a jury, consisted of the borrowing of money from plaintiff against the purported collateral of real estate mortgages owned by Republic which that company was actually simultaneously selling and assigning to others while delivering forged bonds of the obligors and worthless assignments of the mortgages to plaintiff. The judgment against defendant Jacobs is in the sum of $131,907, involving nine separate transactions.
*529 The only substantial ground of appeal advanced is that the knowing participation of Jacobs in the fraudulent transactions was not sufficiently established. We find miscellaneous other contentions of defendant, generally as to rulings on evidence, to be without merit and not to require discussion.
There is no dispute but that Republic, through one or more of its officers, did defraud plaintiff to the extent of somewhat above the amount of the judgment against Jacobs. There is, moreover, little doubt from the evidence that defendant Vitullo, who does not appeal, was a direct and knowing participant in the fraud, the proofs against her being more directly inculpatory than those against Jacobs. However, Jacobs ranked above her in the corporate hierarchy and occupied a desk alongside hers in the office while these transactions were being effected.
Jacobs, as vice-president, executed all nine assignments of mortgage to plaintiff over a period of about a month (June 1964) and on the same day as each such assignment he also executed in the same capacity an assignment of the identical mortgage to an apparently bona fide purchaser thereof. Republic thus came into double funds for each mortgage, concealing from plaintiff the fact that the mortgages assigned to it had simultaneously been sold for value to others.
Neither Jacobs nor Vitullo took the stand to refute the implications of their guilt, and Jacobs' defense, purportedly established through the testimony of his secretarial assistants while associated by Republic, was that he merely signed stacks of blank assignment forms when so requested. It was argued on his behalf that he knew nothing about the frauds when they were taking place. No officer or director of the defendant corporate organization, however, nor anyone else, testified in support of that assertion.
An officer of plaintiff testified that after the frauds were revealed (by which time defendant had left the Republic organization) Jacobs told him he knew of the double assignments and that at a meeting of the board of directors in June 1964 Mrs. Vitullo was instructed to "clean them up." *530 Jacobs did not specify to the officer when he first learned of the situation, indicate that he was in anywise surprised, or explain how his signature was to be found on all sets of the double assignments in the nine instances here involved. (There were other frauds practised on behalf of Republic on plaintiff but not connected to Jacobs by the proofs.)
In an action for damages, fraud may be established by the preponderance or greater weight of the evidence. Fischetto Paper Mill Supply, Inc. v. Quigley Co., Inc., 3 N.J. 149 (1949); Armel v. Crewick, 71 N.J. Super. 213 (App. Div. 1961). The trial court after a careful review of the proofs found in a formal opinion against Jacobs on the issue of his knowing participation in the frauds. We cannot say that the finding could not reasonably have been made on sufficient credible evidence adduced by plaintiff. State v. Johnson, 42 N.J. 146, 162 (1964).
However, Jacobs now argues that the trial court improperly threw into the evidential scales against him an adverse inference from his failure to take the stand in his own defense, thereby impairing his constitutional privilege against self-incrimination. In the course of its opinion the trial court stated:
"He [Jacobs] did not take the witness stand in his own behalf and now endeavors to escape responsibility by shifting the full blame to the co-defendant Vitullo. I am satisfied that defendant Mr. Jacobs was fully informed and equally implicated with Mrs. Vitullo in these fraudulent practices."
Defendant did not urge this point in his brief but raised it for the first time at oral argument. We entertain it in order to eliminate any doubt as to the justification for the judgment against him and because the legal question raised deserves settlement, particularly in view of an interlocutory ruling on a cognate matter by the trial court.
We cannot be certain from the opinion of the trial court whether it was or was not drawing any inferences unfavorable to defendant from his failure to testify in his own defense. *531 One episode at trial would appear to indicate that the court thought such an inference would be unconstitutional. Toward the end of the trial the court denied a motion by plaintiff to introduce into evidence depositions of Jacobs and Vitullo wherein they had refused to testify at the call of plaintiff on grounds of the privilege against self-incrimination. It did so on the express basis of the decision in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). There was never an occasion (other than in the final opinion) for the court to make a formal ruling as to the evidential effect of Jacobs' failure to testify in his own defense, since his simple failure to testify entailed no ruling by the court, and no such ruling was made in the opinion. It was made clear by Jacobs' counsel, however, that his abstention from testimony was for fear of self-incrimination.
In the light of the trial court's ruling on the motion to admit the depositions we think it may fairly be concluded that the determination of liability arrived at in the court's opinion was not intended to rest to any extent on any inference of the kind mentioned. But the determinative consideration is that it makes no difference if it did so intend, since we are of the firm view that the inference, if drawn, was justified and that so doing in this case offended no right of defendant in respect of his privilege against self-incrimination.
The predominant rule has always been that insofar as an adverse inference from failure of a party to testify in a civil cause may tend to visit upon him civil consequences (here, e.g., a judgment for damages) there is no infringement of the party's rights under the Fifth Amendment or similar guarantees. 8 Wigmore on Evidence (rev. 1961), § 2272(e), p. 439, and cases cited, f.n. 14; and see In re Sterling-Harris Ford, Inc., 315 F.2d 277 (7 Cir. 1963); Kaufman v. Hurwitz, 176 F.2d 210 (4 Cir. 1949). We recently recognized and applied the rule in a habeas corpus case, In re Degina, 94 N.J. Super. 267, 274 (App. Div. 1967), certification *532 denied 49 N.J. 368 (1967), following State of South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933).
The rule permitting adverse inferences from the failure of a party in a civil cause to testify as to matters in issue within his personal knowledge is commonplace and elementary in our jurisprudence. In our judgment, neither Malloy, supra, nor any of the other recent decisions of the United States Supreme Court broadening the scope of the protection of the Fifth Amendment impairs that principle in its application to a situation such as presented here. See Murphy v. Waterfront Commission of New York, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).
Malloy and Murphy were tests of a state's right to compel self-incriminating testimony in proceedings to investigate crime or quasi-criminal conduct as against a claim of privilege under the Fifth Amendment, held in those cases to be enforcible in state proceedings. Griffin held it impermissible in a state criminal prosecution for the court or the state to advert to the defendant's failure to testify. Spevack decided that to disbar a lawyer for his failure to respond to a subpoena for his records relevant to an investigation of unethical law practice, when such refusal was on grounds of the privilege, was to impose too serious a penalty as the price of his invocation of the privilege ("threat of disbarment and the loss of professional standing, professional reputation, and of livelihood"; 385 U.S., at p. 511, 87 S.Ct., at p. 628, 17 L.Ed.2d, at p. 578). Garrity held that a confession was illegally introduced into evidence against a policeman in his criminal prosecution for conspiracy when it was shown that the confession was obtained from him during an investigation under threat of his removal from office if he declined to furnish certain information under claim of his privilege. The reversal *533 of the conviction was placed on Fourteenth Amendment grounds against the use of coerced confessions in state courts (385 U.S., at p. 493, 87 S.Ct., at p. 616, 17 L.Ed.2d, at p. 567).
None of the opinions of the United States Supreme Court cited purports to go so far as to absolutely proscribe the visitation of any and all adverse consequences upon one who invokes the Fifth Amendment. As noted, in Garrity the threatened consequence of assertion of privilege was loss of public employment as a police officer; in Spevack the actual consequence was disbarment as a lawyer. In contrast, the present defendant risked only the probative strengthening of a civil claim against himself with an ultimate hazard of nothing more than a money judgment against him. Moreover, the drawing of the inference was not mandatory, but at the discretion of the factfinder. We do not regard these consequences as such a momentous "penalty," within the rationale of Malloy v. Hogan, supra (378 U.S., at p. 8, 84 S.Ct., at p. 1489, 12 L.Ed.2d, at p. 653), as can fairly be said to impair the constitutional privilege.
No constitutional protection is absolute. Traditionally, the courts have weighed each alleged assault on a constitutional right by comparing the social values, public or private, attending the measures impugned as invalid, with the degree of hazard if any to which the constitutional right or privilege was subjected by such conduct. See Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). The interest of the general public in the fair adjudication by courts of civil disputes between citizens ranks very high in the American polity. The permissible drawing by the factfinder of an inference of inability truthfully to deny a civil claim from a defendant's failure to testify as to relevant facts within his personal knowledge which might refute the evidence adduced against him, is a logical, traditional and valuable tool in the process of fair adjudication. It subserves private justice. We conclude that it does not impair the privilege against self-incrimination.
*534 In the light of the nature of the case against defendant made by plaintiff's proofs, it follows that the factfinder could here properly have assayed his failure to testify in this case as justifying an inference that he could not truthfully deny that his participation in the transactions under scrutiny was attended by fraudulent knowledge and intent as to plaintiff
Judgment affirmed.