# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0687-22

A.M.M.,

    Plaintiff-Respondent,

v.

A.M.U.,[1]

    Defendant-Appellant.

_____

Submitted March 5, 2024 – Decided April 15, 2024

Before Judges Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FV-08-1326-22.

Mario J. Persiano, III, attorney for appellant.

Cordry Hartman, LLC, attorneys for respondent (Frances Ann Hartman, on the brief).

PER CURIAM

---

[1] We use initials to protect the confidentiality of the parties. R. 1:38-3(d)(10).

Defendant appeals from a July 7, 2022 final restraining order (FRO) entered against him and in favor of plaintiff, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  Because the trial judge made appropriate credibility determinations, his factual findings are supported by substantial credible evidence, and those facts were correctly applied to the law, we affirm.

We glean the facts and procedural history from the trial record.  On April 11, 2022, plaintiff obtained a temporary restraining order (TRO) against defendant following an incident that occurred between them on that day.  She alleged the predicate act of assault under N.J.S.A. 2C:12-1.  She claimed:

> [S]he was in defendant's room in his residence and a verbal argument ensued over issues with infidelity. Plaintiff stated during this argument def[endant] began to choke her.  Pla[intiff] stated def[endant] placed his hand around her neck and had her on her back on his bed.  Pla[intiff] believes she was choked for approximately twenty seconds and she stated that she felt dizzy as he obstructed her airway but did not lose consciousness.  Pla[intiff] advised that she was able to scream for him to get off her and had to physically push him do she could get up from the bed.

Plaintiff also described a prior history of domestic violence that involved "one other time [d]ef[endant] had [his] hand around pla[intiff's] neck and choked her, unreported."

2

On May 12, 2022, plaintiff amended the TRO to include further allegations of the parties' history of domestic violence to include:

> 10-30-21 def[endant] slapped pla[intiff] in face [and] left a bruise. [11-20]-21 def[endant] slapped pla[intiff] [and] left a red mark. 1-21-22 def[endant] slapped pla[intiff] in the face [and] left a red mark. 1[-]27[-]22 – 1[-]28[-]22 def[endant] called [pla]intiff a whore, stupid, and other awful names. 1-27-21 def[endant] threw pla[intiff] into a wall [and] choked her. 10-24-21 def[endant] grabbed [and] bit pla[intiff] on the shoulder, neck, chest [and] legs. He caused pain and bruising. Def[endant] said he was a lion and pla[intiff] was his prey.

The matter was tried over two days, June 16 and July 7, 2022. Plaintiff and her mother testified on her behalf. Defendant did not testify, but his father and stepmother testified on his behalf.

Plaintiff testified that her and defendant's dating relationship included "sadomasochistic type sexual behavior." She admitted they "engaged in rough sex" including "consensual choking." Some of these activities left marks and bruises.

Plaintiff testified she loaned defendant money. She explained when she sought repayment, he would avoid her. Plaintiff asked defendant to hang-out, intending to ask him for the money. They agreed to meet on April 11, 2022, at defendant's house. Once at the house, they went to his bedroom. Sitting on

3

A-0687-22

opposite ends of his bed, they discussed their relationship and his desire for them to continue their relationship. Defendant moved closer to plaintiff, caressing her leg and touching her back and arms. Plaintiff tried to move his hand away and told him she was uncomfortable and did not want to have sex. Then defendant lunged at her, grabbed her throat, and pushed her back on the bed. Plaintiff described defendant "squeezing" her throat and her "struggling to breathe."

The trial judge found plaintiff to be "overall a credible witness." He observed she "answered directly under cross examination" and "never seemed particularly evasive in any way." The judge noted "[h]er displays of emotion were few and far between, but [he] thought appropriate to the occasion."

In addition, the trial judge reviewed pictures of plaintiff taken on and a few days after the April 11, 2022 incident. The judge described the pictures as depicting: (1) discoloration and darkness of plaintiff's right eye; (2) finger marks on the left side of plaintiff's neck; and (3) "reddish purple" bruising on the left side of plaintiff's neck. The judge concluded "the marks [we]re consistent with plaintiff's testimony [of] a choking act by" defendant.

The trial judge stated that he expected defendant to testify. The judge noted defendant did not have a "burden" and was not required to "disprove" the

4

case. Moreover, he observed defendant's testimony was protected under the PDVA and could not be used except in limited circumstances in a criminal trial. Nonetheless, the judge explained he reasonably expected defendant to "explain," "clarify," or "contradict" plaintiff's evidence, and he declined to do so. Under the circumstances, the judge noted he could take an adverse inference against defendant based on his choice not to testify.

The trial judge found defendant committed the predicate act of assault. The judge determined defendant "grab[bed plaintiff] by the throat, squeez[ed] to the point where [he] saw evidence of injury around the eyes and the left side of her throat, and cut[] off her air supply." The judge credited plaintiff's testimony wherein she "absolutely den[ied]" anything sexual about the April 11 incident.

The judge considered whether there were prior acts of domestic violence. He noted the evidence revealed consensual "slapping"; "rough sex"; choking of plaintiff; and "distasteful" name calling. He concluded he could not "make any affirmative finding" that there was a prior history of domestic violence.

The trial judge found plaintiff required the protection of an FRO. The judge determined defendant's choking of plaintiff, on April 11, 2022, was an act of "dominance and control . . . [that] the [PDVA] was geared to prevent." The

5

judge determined, unequivocally, the FRO was necessary considering the "assault by strangulation."

On appeal, defendant argues: (1) his due process rights were violated when his attorney advised him not to testify because of a parallel criminal prosecution; and (2) the trial judge erred in his application of the factors under N.J.S.A. 2C:25-19(a)(1) through (6). We disagree.

Our review of a trial judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to family court fact[-]finding." Id. at 413. Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). On the other hand, we will review questions of law determined by the trial court de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A-0687-22

"We view the task of a judge considering a domestic violence complaint, where the jurisdictional requirements have otherwise been met, to be two-fold." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006).[2] "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(]a[)] has occurred." Ibid. "In performing th[is] function, the [PDVA] . . . require[s] that acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties." Id. at 125-26 (citations and internal quotations omitted).

"The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides protection for the victim." Id. at 126; see also J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting N.J.S.A. 2C:25-29(b)) (explaining that an FRO should not be issued without a finding that relief is "necessary to prevent further abuse"). "[T]he Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order." Id. at 126-27 (citation omitted).

---

[2] The parties stipulated to a "dating relationship," N.J.S.A. 2C:25-19(d); and the trial court's jurisdiction under the PDVA.

A-0687-22

"[T]he guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(]a[)](1) to – 29[(]a[)](6)." Id. at 127. Because some factors may be irrelevant in a given circumstance, "N.J.S.A. 2C:25-29(a) does not mandate that a trial court incorporate all of those factors into its findings when determining whether or not an act of domestic violence has been committed." Cesare, 154 N.J. at 401-02.

Moreover, "one sufficiently egregious action [may] constitute domestic violence . . . , even with no history of abuse between the parties." Id. at 402; see also A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016) (citation omitted) ("When the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO 'is most often perfunctory and self-evident.'").

The PDVA provides:

> If a criminal complaint arising out of the same incident which is the subject matter of a complaint brought under [the PDVA] has been filed, testimony given by the plaintiff or defendant in the domestic violence matter shall not be used in the simultaneous or subsequent criminal proceeding against the defendant, other than domestic violence contempt matters and where it would otherwise be admissible hearsay under the rules of evidence that govern where a party is unavailable.

A-0687-22

[N.J.S.A 2C:25-29(a).]

"A domestic violence complaint is civil in nature." M.S. v. Millburn Police Dept., 197 N.J. 236, 248 (2008) (citing Cesare, N.J. 154 at 400). In civil actions, a failure of a party to testify can lead to a negative inference. Duratron Corp. v. Republic Stuyvesant Corp., 95 N.J. Super. 527, 532 (App. Div. 1967). Moreover, given the civil nature of these proceedings, a claim of ineffective assistance of counsel, which applies in criminal cases based upon the Sixth Amendment right to counsel in such cases, Strickland v. Washington, 466 U.S. 668, 687 (1984), is inapplicable.

Defendant argues the trial judge's "failure to conduct a more thorough analysis and apply N.J.S.A. 2C:15-29(a)(1) through (6) amounts to an abuse of discretion in a case such as this where plaintiff testified that the parties would leave marks on each other during sexual activity." We disagree.

Here, the judge relied on plaintiff's testimony, which he found to be credible; a negative inference against defendant for his failure to testify; and the photographic evidence; in finding that defendant assaulted plaintiff under the PDVA. We defer to the judge's factual findings and credibility determinations in a bench trial. Having reviewed the record, including the judge's credibility findings, we are satisfied there was ample credible evidence in the record to support the judge's conclusion that

defendant committed the predicate act of assault. Moreover, we are convinced the judge's determination that plaintiff required an FRO was amply supported by credible evidence. Given the judge's finding of "assault by strangulation," the entry of an FRO was "self-evident" and "perfunctory" considering the "egregious" nature of defendant's action.

Any remaining arguments raised by defendant are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION