SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**M.A. v. J.H.M.** **(A-1-24) (089673)**

**Argued January 7, 2025 -- Decided May 27, 2025**

**NORIEGA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a defendant in a Prevention of Domestic Violence Act (PDVA) final restraining order (FRO) hearing may invoke the privilege against self-incrimination and, if so, whether the court may draw an adverse inference from his silence.

Plaintiff, M.A., and defendant, J.H.M., were married in 2019 and have one son together. Plaintiff and her son moved out of the marital home in January 2023, and she initiated divorce proceedings in March 2023. In April 2023, police arrested defendant and charged him with various weapon offenses after he used a handgun to threaten the process server who was attempting to deliver divorce papers to him. Defendant's weapons were seized and he was granted pre-trial release. In July 2023, plaintiff filed a civil complaint, pursuant to the PDVA, seeking a temporary restraining order (TRO), alleging that defendant committed the predicate offenses of stalking and harassment. The court issued plaintiff a TRO prohibiting defendant from having any contact with her, granting her temporary custody of their son, and denying defendant parenting and visitation time until further notice.

The FRO hearing took place over several days, and plaintiff called defendant as a witness. Defense counsel invoked the privilege against self-incrimination on behalf of defendant, claiming defendant could rightfully refuse to provide any testimony. Over defense counsel's objections, the trial court ordered defendant to take the stand, swear an oath, and undergo direct examination. Defendant gave his name when asked but invoked the Fifth Amendment in response to the next question -- whether he was married to plaintiff. Counsel for plaintiff and defendant argued over whether the Fifth Amendment could properly be invoked and to what extent. Plaintiff's counsel proffered that he intended to ask questions about driving by plaintiff's house and calling her at work, the alleged acts on which plaintiff's complaint was based. Defense counsel insisted that the Fifth Amendment protected defendant because he could still be charged with harassment and stalking at a later time, as the statute of limitations had not yet expired. The court ruled in favor of plaintiff but stayed the matter pending defendant's decision to appeal.

1

The Appellate Division denied leave to appeal. While defendant's motion for leave to appeal was pending before the Court, the Appellate Division published T.B. v. I.W., 479 N.J. Super. 404 (App. Div. 2024), which addresses an issue substantially similar to the question presented in this case. The Court granted defendant leave to appeal. 258 N.J. 408 (2024).

**HELD:** Although the Fifth Amendment does not afford a defendant in a PDVA FRO hearing blanket immunity, a defendant may invoke the privilege against self-incrimination in response to specific questions that raise reasonable risks of self-incrimination, and no adverse inference may be drawn from the exercise of that right. The PDVA immunity provision contained in N.J.S.A. 2C:25-29(a) is not coextensive with the privilege against self-incrimination and is therefore insufficient to safeguard a defendant's rights under the Fifth Amendment.

1. The Fifth Amendment to the United States Constitution establishes that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The privilege has applied with equal force in New Jersey pursuant to the Fourteenth Amendment. A witness may assert the privilege against self-incrimination "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." Kastigar v. United States, 406 U.S. 441, 444 (1972). In civil proceedings, an individual may invoke the Fifth Amendment privilege against self-incrimination where the answers might incriminate him in future criminal proceedings. But the privilege is not absolute. It applies only in instances where the witness has reasonable cause to apprehend danger from a direct answer. Further, the U.S. Supreme Court has sanctioned the government's authority to compel testimony over a valid Fifth Amendment claim when it offers "use and derivative use" immunity -- a form of immunity that acts as a proscription against the use in any criminal case of compelled testimony or of any information directly or indirectly derived from that testimony. Such immunity "is coextensive with the scope of the privilege against self-incrimination" and therefore "is consonant with Fifth Amendment standards." Id. at 452-53. (pp. 10-12)

2. The Fifth Amendment protects not only actual testimony but, in criminal cases, the choice not to testify: a fact finder may not draw an adverse inference against a criminal defendant who claims the Fifth Amendment privilege against self-incrimination. In civil cases, however, a court may draw an adverse inference against witnesses who refuse to testify in response to probative evidence offered against them. (pp. 12-14)

3. This case arises in the unique context of a PDVA FRO proceeding. The PDVA grants a limited immunity for testimony provided at FRO hearings in a related criminal case: N.J.S.A. 2C:25-29(a) prohibits use of a PDVA defendant's testimony as affirmative evidence in the related criminal prosecution but does not prohibit

2

using the testimony for impeachment. Balancing the statutory immunity the PDVA affords and the constitutional guarantees of the Fifth Amendment, the Appellate Division considered the scope of the privilege against self-incrimination in the context of a PDVA FRO hearing in T.B. There, the Appellate Division held that "a trial court may not draw an adverse inference in an FRO proceeding based solely upon defendant's decision to invoke his Fifth Amendment right to not testify." T.B., 479 N.J. Super. at 409. The appellate court explained that N.J.S.A. 2C:25-29(a), the PDVA's limited immunity provision, is not sufficient protection for a defendant's Fifth Amendment rights because it does not foreclose the possibility of future prosecution in actions related to the underlying predicate offenses or possible criminal actions beyond those related to the predicate offenses underlying the FRO hearing. Id. at 418-19. The Appellate Division also emphasized the fundamental distinction between PDVA FRO hearings and typical civil actions, noting that in FRO hearings, a defendant who chooses to testify must necessarily confront and address the alleged criminal predicate acts. Id. at 416. Finally, the appellate court grounded its reasoning in the extensiveness and the severity of the penalties that may result for a defendant in an FRO hearing. Id. at 416-17. (pp. 14-16)

4. The Court agrees with the reasoning of T.B. on the first two principles, which are sufficient to resolve this case. Given the criminal overlay of PDVA hearings -- which, although housed in the Civil Part, involve a search for evidence of criminal conduct -- the statutory immunity provision in N.J.S.A. 2C:25-29(a) does not satisfy the constitutional standard for immunity because it is not coextensive with the Fifth Amendment. As to T.B.'s third principle, the Court holds instead that it is the criminality of the predicate acts -- not the consequences associated with an FRO -- that give rise to Fifth Amendment protections. (pp. 16-20)

5. The Court's holding in this case does not permit a defendant to invoke a blanket privilege as to all testimony in a PDVA hearing. Instead, the privilege must be asserted on a question-by-question basis, and the defendant must "ha[ve] reasonable cause to apprehend danger from a direct answer" according to the clear framework for evaluating the proper invocation of the Fifth Amendment privilege set forth in Hoffman v. United States, 341 U.S. 479, 486-87 (1951). By way of guidance, the Court distinguishes the question regarding defendant's marital status from questions like "[d]id you place the phone call to my client on July 5," which could possibly expose the defendant to criminal liability, and explains how both types of questions should be treated on remand. (pp. 20-22)

**The trial court's ruling is REVERSED and the matter REMANDED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and HOFFMAN join in JUSTICE NORIEGA's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-1 September Term 2024
089673

M.A.,

Plaintiff-Respondent,

v.

J.H.M.,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| January 7, 2025 | May 27, 2025 |

Michael J. DeMarco argued the cause for appellant (Ricci & Fava Law, and Marc A. Festa, attorneys; Michael J. DeMarco and Marc A. Festa, of counsel and on the brief).

Michael J. Pasquale argued the cause for respondent (Michael J. Pasquale, on the briefs).

Ashley Brooks, Assistant Deputy Public Defender, argued the cause for amicus curiae Public Defender of New Jersey (Jennifer N. Sellitti, Public Defender, attorney; Ashley Brooks, of counsel and on the brief).

Jason L. LeBoeuf submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (Ziegler Law Group, attorneys; Jason L. LeBoeuf and Kristen E. Blucher, on the brief).

In this appeal, we consider whether a defendant in a Prevention of Domestic Violence Act (PDVA) final restraining order (FRO) hearing may invoke the privilege against self-incrimination and, if so, whether the court may draw an adverse inference from his silence. The trial court here concluded that defendant, J.H.M., could not invoke the privilege and that his refusal to testify would result in an adverse inference -- namely, that he was being untruthful regarding the subject matter. We disagree. We hold that although the Fifth Amendment does not afford a defendant in a PDVA FRO hearing blanket immunity, a defendant may invoke the privilege against self-incrimination in response to specific questions that raise reasonable risks of self-incrimination, and that no adverse inference may be drawn from the exercise of that right. Further, we hold that the PDVA immunity provision contained in N.J.S.A. 2C:25-29(a) is not coextensive with the privilege against self-incrimination and is therefore insufficient to safeguard a defendant's rights under the Fifth Amendment.

I.

A.

Plaintiff, M.A., and defendant were married in 2019 and have one son together, born the same year. Plaintiff and her son moved out of the marital home in January 2023, and she initiated divorce proceedings in March 2023. In April 2023, police arrested defendant in Passaic County and charged him with various weapon offenses after he used a handgun to threaten the process server who was attempting to deliver divorce papers to him. Following his arrest, authorities seized defendant's weapons, and he was remanded to the county jail and ultimately granted pre-trial release. The disposition of those charges is not germane to our resolution of this matter.

On July 6, 2023, plaintiff filed a civil complaint, pursuant to the PDVA, seeking a temporary restraining order (TRO). She alleged that defendant committed the predicate offenses of stalking in violation of N.J.S.A. 2C:12-10 and harassment in violation of N.J.S.A. 2C:33-4. In support of the predicate offense of stalking, plaintiff alleged that on July 4, 2023, defendant drove past her parents' home at a high rate of speed, nearly colliding with a vehicle that plaintiff's brother was driving. Regarding the predicate offense of harassment, plaintiff alleged that the next day, defendant called her at work pretending to be someone else. Before picking up the phone, she noticed the caller ID

3

showed defendant's father's number. No one responded when she answered, but she recognized defendant's mother's voice in the background asking, "is she there?" and then heard defendant grunt and hang up.

The court issued plaintiff a TRO prohibiting defendant from having any contact with her, granting her temporary custody of their son, and denying defendant parenting and visitation time until further notice.

The FRO hearing took place over several days. During the hearing, plaintiff testified and presented the testimony of her co-worker and her brother. Plaintiff sought to introduce a video recording of defendant's altercation with the process server, which the court deemed inadmissible. But the court did permit plaintiff to testify concerning the impact that incident had on her state of mind and to the reasonableness of her fear of defendant.

Plaintiff then called defendant as a witness. Defense counsel invoked the privilege against self-incrimination on behalf of defendant, claiming defendant could rightfully refuse to provide any testimony. Over defense counsel's objections, the trial court ordered defendant to take the stand, swear an oath, and undergo direct examination. Defendant gave his name when asked but invoked the Fifth Amendment in response to the next question -- whether he was married to plaintiff. Counsel for plaintiff and defendant

argued over whether the Fifth Amendment could properly be invoked and to what extent.

Plaintiff's counsel argued against blanket immunity, contending that the existence of a wholly unrelated criminal charge does not extend Fifth Amendment protections to the civil action. Plaintiff's counsel therefore argued that defendant was obligated to answer questions regarding any matter relevant to the FRO or its underlying predicate offenses. Additionally, plaintiff's counsel argued, if defendant refused to answer, the court must draw an adverse inference.

Plaintiff's counsel proffered that he intended to "ask [defendant] questions, A, about driving by the house. And B, about the phone call." Defense counsel insisted that the Fifth Amendment protected defendant because he could still be charged with harassment and stalking at a later time, as the statute of limitations had not yet expired. The court ruled in favor of plaintiff:

> I don't think that the questions that [plaintiff's counsel] has asked thus far and which he proffered he would ask would make [defendant] susceptible to waiving his Fifth Amendment right against self incrimination [in a] third party case. So, I am going to require [defendant] to answer . . . .
>
> . . . .

5

> [I]f [defendant] were to assert his Fifth Amendment right in direct contravention to this Court's order that he answer, the Court could then draw a negative inference that perhaps he is [not] being truthful or forthcoming and that the issue is conceded. That would be the worst case scenario, right?

At defendant's request, the court stayed the matter pending defendant's decision to appeal.

## B.

The Appellate Division denied leave to appeal. Defendant then filed a motion for leave to appeal to this Court. Before we decided the motion, the Appellate Division published T.B. v. I.W., 479 N.J. Super. 404 (App. Div. 2024), which addresses an issue substantially similar to the question before us. After requesting supplemental briefing from the parties concerning the relevance of T.B. to the present case, we granted defendant's motion for leave to appeal. 258 N.J. 408 (2024). We also granted motions to appear as amici curiae from the Office of the Public Defender (OPD) and the Association of Criminal Defense Lawyers of New Jersey (ACDL).

## II.

## A.

Defendant argues that a defendant against whom an FRO is sought possesses the privilege against self-incrimination guaranteed under the Fifth Amendment. Defendant contends that answering questions related to the

6

predicate offenses would risk implicating himself in criminal offenses that the State could prosecute separately; whether those charges presently exist, says defendant, is of no moment. Defendant contends that the immunity provision contained in N.J.S.A. 2C:25-29(a) is insufficient to safeguard his rights under the Fifth Amendment because it does not serve as an absolute bar to the State using testimony from PDVA proceedings against him in a later criminal proceeding. According to defendant, the testimony will still be available for cross-examination, impeachment, and potential derivative investigative purposes. While acknowledging that adverse inferences are generally permissible in civil matters, defendant argues that PDVA FRO proceedings are more akin to criminal trials given a plaintiff's obligation to prove predicate acts defined in our criminal code. As a result, defendant contends that the trial court's decision to compel his testimony or face an adverse inference was unconstitutional and must be reversed. Defendant also requests that this Court adopt the Appellate Division's holding in T.B. that an FRO judge violates a defendant's Fifth Amendment privilege by drawing an adverse inference from a defendant's refusal to testify.

B.

Plaintiff responds that the Fifth Amendment does not provide a blanket privilege for PDVA defendants to refuse to answer questions pertaining to the

7

predicate acts of domestic violence. Plaintiff argues that N.J.S.A. 2C:25-29(a)'s immunity sufficiently protects defendant from having his testimony concerning the predicate acts in the FRO hearing used against him in any future prosecution. Therefore, plaintiff contends, not only must a defendant testify during an FRO hearing when called by the adverse party, but refusal to testify concerning the predicate offenses must give rise to an adverse inference.

C.

Amicus OPD argues for a blanket rule that PDVA defendants should not be compelled to testify or face an adverse inference for refusing to do so. Otherwise, the OPD contends, PDVA defendants will be forced to choose between waiving their Fifth Amendment privilege and risking imposition of an FRO with all its attendant serious consequences. The OPD asserts that N.J.S.A. 2C:25-29(a) is not co-extensive with the privilege against self-incrimination and therefore cannot substitute for it. The OPD argues that by testifying, defendant risks providing the State with testimony that it could then use to develop derivative evidence against him in a criminal proceeding arising out of the same incidents, because the statutes of limitations on those offenses have yet to expire.

8

D.

Amicus ACDL urges this Court to prohibit adverse inferences against defendants who invoke their privilege in PDVA FRO hearings, arguing that an FRO is distinguishable from other civil actions because it carries consequences comparable to certain criminal convictions. Moreover, the ACDL argues that the PDVA gives plaintiffs clear advantages, including the lower preponderance of the evidence standard to prove criminal offenses, liberal allowance for plaintiffs to amend complaints and for evidence admissibility, and the ability of a court to order a defendant to pay a plaintiff's legal fees but not the inverse. The ACDL adds that N.J.S.A. 2C:25-29(a) does not provide sufficient protection for a defendant's testimony to permit an adverse inference. Similar to the OPD's argument, the ACDL also contends that defendant is exposed to prosecution for offenses for which the statute of limitations has not run, and so his testimony could provide the State with impeachment evidence. Moreover, the ACDL argues the State may use defendant's testimony from the FRO hearing as derivative evidence in its prosecution of him on the pending weapons charge. Like defendant, the ACDL argues that the Appellate Division's opinion in T.B. is sound and urges this Court to confirm it.

III.

A.

"When no issue of fact exists, and only a legal question remains, we owe no special deference to the trial court's legal determinations." Padilla v. Young Il An, 257 N.J. 540, 547 (2024). Such "legal rulings are reviewed de novo." State v. Zingis, 259 N.J. 1, 14 (2024).

B.

1.

The Fifth Amendment to the United States Constitution establishes that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The privilege has applied with equal force in our state pursuant to the Fourteenth Amendment. State v. Camacho, 218 N.J. 533, 542 (2014). "The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement -- the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will . . . ." Malloy v. Hogan, 378 U.S. 1, 8 (1964); accord Camacho, 218 N.J. at 542.

A witness may assert the privilege against self-incrimination "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." Kastigar v. United States, 406 U.S. 441, 444 (1972). In civil

10

proceedings, an individual may invoke the Fifth Amendment privilege against self-incrimination "where the answers might incriminate him in future criminal proceedings." Vega v. Tekoh, 597 U.S. 134, 141 (2022) (quoting Minnesota v. Murphy, 465 U.S. 420, 426 (1984)). The privilege against self-incrimination "reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. . . . [The U.S. Supreme Court] has been zealous to safeguard the values that underlie the privilege." Kastigar, 406 U.S. at 444-45.

Still, the privilege is not absolute. The privilege "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Id. at 445. It is applicable only in "instances where the witness has reasonable cause to apprehend danger from a direct answer. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself . . . . It is for the court to say whether his silence is justified . . . ." Hoffman v. United States, 341 U.S. 479, 486 (1951).

Further, the U.S. Supreme Court has sanctioned the government's authority to compel testimony over a valid Fifth Amendment claim when it offers "use and derivative use" immunity. Kastigar, 406 U.S. at 452. "[T]he concept of 'use and derivative use' or 'use and fruits' immunity [is] a form of

immunity that acts as a proscription against the use in any criminal case of compelled testimony or of any information directly or indirectly derived from that testimony." State v. Patton, 133 N.J. 389, 400 (1993) (citing Kastigar, 406 U.S. at 453).[1] Such immunity "is coextensive with the scope of the privilege against self-incrimination" and therefore "is consonant with Fifth Amendment standards." Kastigar, 406 U.S. at 452-53.

2.

The Fifth Amendment protects not only actual testimony but, in criminal cases, the choice not to testify:  a fact finder may not draw an adverse inference against a criminal defendant who claims the Fifth Amendment privilege against self-incrimination. Griffin v. California, 380 U.S. 609, 613-14 (1965).  An adverse inference is "[a] detrimental conclusion drawn by the factfinder from a party's failure to produce evidence that is within the party's control." Black's Law Dictionary 927 (12th ed. 2024).  "The privilege against self-incrimination would be reduced to a hollow mockery if its exercise could

---

[1] Courts contrast use and derivative use immunity with transactional immunity.  Whereas a grant of use and derivative use immunity is coextensive with the Fifth Amendment, "[t]ransactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege." Kastigar, 406 U.S. at 453.  Transactional immunity is "overprotective of the privilege," operating as a complete pardon for the related offense. Patton, 133 N.J. at 400 (internal quotations omitted).

be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury." Slochower v. Bd. of Higher Educ. of N.Y.C., 350 U.S. 551, 557 (1956).

In civil cases, however, a court may draw an adverse inference against a witness "when they refuse to testify in response to probative evidence offered against them." Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). The U.S. Supreme Court has recognized that in the civil context the adverse inference drawn from a witness's invocation of the Fifth Amendment serves not as a penalty, but as a balancing of the privilege against self-incrimination with the truth-seeking function of civil proceedings. That is because,

> [i]n ordinary civil cases, the party confronted with the invocation of the privilege by the opposing side has no capacity to avoid it, say, by offering immunity from prosecution. The rule allowing invocation of the privilege, though at the risk of suffering an adverse inference or even a default, accommodates the right not to be a witness against oneself while still permitting civil litigation to proceed. Another reason for treating civil and criminal cases differently is that "the stakes are higher" in criminal cases, where liberty or even life may be at stake, and where the Government's "sole interest is to convict."
>
> [Mitchell v. United States, 526 U.S. 314, 328 (1999) (quoting Baxter, 425 U.S. at 318-19).]

Following the U.S. Supreme Court, we have held that in a civil case a "trial court may readily draw an adverse inference" against a non-testifying

13

civil defendant. <u>Mahne v. Mahne</u>, 66 N.J. 53, 60 (1974) (citing <u>Duratron Corp. v. Republic Stuyvesant Corp.</u>, 95 N.J. Super. 527 (App. Div. 1967)). The Appellate Division has explained that

> [t]he permissible drawing by the factfinder of an inference of inability truthfully to deny a civil claim from a defendant's failure to testify as to relevant facts within his personal knowledge which might refute the evidence adduced against him, is a logical, traditional and valuable tool in the process of fair adjudication. It subserves private justice. We conclude that it does not impair the privilege against self-incrimination.
>
> [<u>Duratron Corp.</u>, 95 N.J. Super. at 533.]

### C.

This case arises in the unique context of a PDVA FRO proceeding. The Legislature has explained the intent and public policy underlying the PDVA as "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18. The statute grants a limited immunity for testimony provided at FRO hearings in a related criminal case:

> [i]f a criminal complaint arising out of the same incident which is the subject matter of a complaint brought under [the PDVA] has been filed, testimony given by the plaintiff or defendant in the domestic violence matter shall not be used in the simultaneous or subsequent criminal proceeding against the defendant, other than domestic violence contempt matters and where it would otherwise be admissible hearsay under the rules of evidence that govern where a party is unavailable.

14

[N.J.S.A. 2C:25-29(a).]

Although that language "prohibits use of a [PDVA] defendant's testimony as affirmative evidence in the related criminal prosecution," the Appellate Division has previously held that the State in a related criminal proceeding may "use the testimony given by the parties at the [PDVA FRO] hearing, solely for the purposes of impeachment." State v. Duprey, 427 N.J. Super. 314, 324-25 (App. Div. 2012).

In addition to that statutory grant of limited immunity, it is beyond dispute that a defendant enjoys the Fifth Amendment protection against self-incrimination in a PDVA FRO hearing. See Lefkowitz v. Cunningham, 431 U.S. 801, 805 (1977) ("[S]ince the test is whether the testimony might later subject the witness to criminal prosecution, the privilege is available to a witness in a civil proceeding, as well as to a defendant in a criminal prosecution."); see also State v. P.Z., 152 N.J. 86, 101 (1997) (noting that, consistent with the federal standard, New Jersey permits the invocation of the privilege in civil proceedings).

Balancing the statutory immunity the PDVA affords and the constitutional guarantees of the Fifth Amendment, the Appellate Division considered the scope of the privilege against self-incrimination in the context of a PDVA FRO hearing in T.B. There, the Appellate Division held that "a

15

trial court may not draw an adverse inference in an FRO proceeding based solely upon defendant's decision to invoke his Fifth Amendment right to not testify." T.B., 479 N.J. Super. at 409. The defendant in T.B. refused to testify, invoked the privilege, and the trial court applied an adverse inference to conclude that the alleged acts occurred. Id. at 409-11. The Appellate Division reversed, barring the inference. The appellate court explained that N.J.S.A. 2C:25-29(a), the PDVA's limited immunity provision, is not sufficient protection for a defendant's Fifth Amendment rights because it does not foreclose the possibility of future prosecution in actions related to the underlying predicate offenses or possible criminal actions beyond those related to the predicate offenses underlying the FRO hearing. Id. at 418-19. The Appellate Division also emphasized the fundamental distinction between PDVA FRO hearings and typical civil actions, noting that in FRO hearings, a defendant who chooses to testify must necessarily confront and address the alleged criminal predicate acts. Id. at 416. Finally, the appellate court grounded its reasoning in the extensiveness and the severity of the penalties that may result for a defendant in an FRO hearing. Id. at 416-17.

## IV.

We agree with the reasoning of T.B. on the first two principles, which we consider sufficient to resolve this case. As to its third principle, we hold

16

instead that the applicability of the Fifth Amendment privilege against self-incrimination in the context of a PDVA hearing does not hinge on the statutory penalties associated with an FRO.  Rather, the privilege is triggered because the testimony sought necessarily implicates underlying conduct that is criminal in nature.  It is the criminality of the predicate acts -- not the civil remedies or collateral consequences -- that give rise to the constitutional protections of the Fifth Amendment.

A.

In the unique setting of an FRO hearing, the traditional civil-criminal dichotomy must yield to the realities presented.  Although housed in the Civil Part, FRO hearings involve a search for evidence of criminal conduct.  Accordingly, the protections of the Fifth Amendment must be meaningfully applied in the FRO context.  Fifth Amendment protections are particularly important in PDVA hearings because, although the domestic violence complaint is civil in form, a defendant who testifies in the proceeding "must necessarily address the criminal predicate acts alleged."  Id. at 416.  Indeed, a factor that distinguishes the PDVA from other forms of remedial legislation is that its statutory framework is fundamentally rooted in acts defined as crimes under New Jersey law to justify its protective measures.  See ibid. ("One distinction between the [PDVA] and other remedial legislation is the conduct

17

regulated by the Act is grounded in offenses defined in the Criminal Code."
(alteration in original) (quoting D.N. v. K.M., 429 N.J. Super. 592, 605-06
(App. Div. 2013))).

Given this criminal overlay, the statutory immunity provision in N.J.S.A.
2C:25-29(a) does not satisfy the constitutional standard for immunity because
it is not coextensive with the Fifth Amendment. The immunity provision lacks
derivative use protection by leaving open the possibility that law enforcement
may build a criminal case using leads obtained from compelled testimony at
the FRO hearing -- precisely what the Fifth Amendment's privilege against
self-incrimination prohibits. The Court in Kastigar emphasized that the
government bears the burden, in any subsequent prosecution, to prove that all
evidence it proposes to use is derived from sources wholly independent of the
compelled testimony.

The PDVA's immunity provision provides no such safeguard. Without
it, the statutory immunity does not adequately protect a defendant's
constitutional rights. The immunity provision of the PDVA serves as a shield
for both plaintiffs and defendants navigating exposure to criminal prosecution;
for example, the provision allows both parties the opportunity to tell their
stories voluntarily without the risk of provoking criminal prosecution for any
incidents they disclose related to the predicate offenses. This limited

18

protection, however, does not permit use of the provision as a sword to compel testimony under threat of adverse inference.

Moreover, the use of adverse inferences in this context imposes a penalty on defendants who invoke their Fifth Amendment privilege in response to questioning in the face of pending or potential criminal charges, effectively forcing the very choice the Constitution seeks to prohibit: to remain silent and risk an adverse outcome or to testify and risk self-incrimination. An adverse inference "cuts down on the privilege [against self-incrimination] by making its assertion costly." Griffin, 380 U.S. at 614. "[A] defendant must pay no court-imposed price for the exercise of his constitutional privilege not to testify." Carter v. Kentucky, 450 U.S. 288, 301 (1981).

To reduce our state's Fifth Amendment jurisprudence to a rigid civil-criminal dichotomy and mechanically apply that framework to PDVA FRO hearings -- solely because they are conducted by the Civil Part -- fails to account for the true nature of such proceedings and disregards a core purpose of the Fifth Amendment: protecting against self-incrimination where future criminal exposure remains a real possibility.

We therefore disagree with the trial court and hold that in PDVA FRO hearings, the court may not draw an adverse inference against a defendant for

19

invoking the privilege against self-incrimination when refusing to answer a specific question that reasonably raises the risk of self-incrimination.

The trial court erred here by focusing narrowly on defendant's exposure to prosecution only as it related to the separately pending weapons charge, without adequately considering the Fifth Amendment implications of compelling defendant to testify about the predicate acts underlying the domestic violence allegations. Such an approach overlooks the real and substantive risk of self-incrimination posed by such testimony and risks creating a chilling effect that may deter individuals from exercising their constitutional rights in proceedings with serious legal consequences.

B.

1.

Our holding today does not permit a defendant to invoke a blanket privilege as to all testimony in a PDVA hearing. Instead, the privilege must be asserted on a question-by-question basis, and the defendant must "ha[ve] reasonable cause to apprehend danger from a direct answer." Hoffman, 341 U.S. at 486. The U.S. Supreme Court provides a clear framework for evaluating the proper invocation of the Fifth Amendment privilege:

> The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself -- his say-so does not of itself establish the hazard of incrimination. It is for the court

20

to say whether his silence is justified, <u>Rogers v. United States</u>, 340 U.S. 367 (1951), and to require him to answer if "it clearly appears to the court that he is mistaken." <u>Temple v. Commonwealth</u>, 75 Va. 892, 899 (1881). However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." <u>See</u> Taft, J., in <u>Ex parte Irvine</u>, 74 F. 954, 960 (C.C.S.D. Ohio, 1896).

[<u>Id.</u> at 486-87.]

Accordingly, it is the responsibility of the trial judge to determine whether, in the specific context of the question posed, a direct answer -- or even an explanation for refusing to answer -- may present a real danger of self-incrimination. <u>See</u> <u>Nat'l Life Ins. Co. v. Hartford Accident & Indem. Co.</u>, 615 F.2d 595, 598 (3d Cir. 1980) (holding that when a witness invokes the Fifth Amendment, "[t]he juridical responsibility of objectively assessing whether the silence is justified rests with the court") (citing <u>Hoffman</u>, 341 U.S. at 487).

21

## 2.

By way of guidance, we illustrate how those principles apply to the present case. Defendant initially identified himself and then invoked the Fifth Amendment privilege in response to a question regarding his marital status with plaintiff. The court could have placed on the record that the privilege did not apply to that question because it pertained solely to the issue of whether the parties were married. Thus, the court could have permitted the question and required the defendant to answer, or taken an adverse inference if defendant refused. However, the court then stated that defendant would also be required to answer a question like "[d]id you place the phone call to my client on July 5[, 2023]?" But answering such a question could possibly expose the defendant to criminal liability. Upon remand, if plaintiff chooses to call defendant to testify, the court is to conduct an analysis each time defendant invokes the privilege -- should he choose to do so -- to determine whether the question posed requires defendant to speak to a criminal matter. If so, the court must permit defendant to refuse to answer and must not draw an adverse inference from that choice. This approach comports with the Fifth Amendment.

22

V.

The trial court's ruling is reversed and the matter remanded for proceedings to continue in accordance with this opinion.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and HOFFMAN join in JUSTICE NORIEGA's opinion.